UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA | DECISION & ORDER |
| v. | and |
| | REPORT & RECOMENDATION |
| EARNEST BAKER, | |
| Defendant. | 21-CR-6042-EAW-MJP |

---

**PEDERSEN, M.J.** On June 17, 2021, the Court heard oral argument on Defendant's Omnibus Motion. The Court issued a decision on some matters (Order on Mot., ECF No. 16) and reserved several issues for this decision and order and report and recommendation, including: Bill of Particulars, Discovery and Inspection, Dismissal of Indictment Counts, Suppression of Tangible Evidence, and Inspection of Grand Jury Minutes.

### *Case History*

On April 30, 2020, Earnest Baker (the "Defendant" or "Baker") was charged by felony complaint, along with 14 others, with conspiracy to possess, with intent to distribute and to distribute, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance; 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance; and 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) and 846.

On or about July 16, 2020, the grand jury returned Indictment No. 20-CR-6101 against Defendant and 16 others (hereinafter referred to as the "old indictment").

Baker was charged in Count One of the old indictment, together with all of his co-defendants, with conspiracy to possess, with intent to distribute and to distribute, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance; 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance; 280 grams or more of a mixture and substance containing a detectable amount of cocaine base, a Schedule II controlled substance; and 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) and 846, allegedly occurring on or about January 2016 through April 30, 2020.

Defendant was charged in Count Nine of the old indictment with possession with intent to distribute 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18, United States Code, Section 2, allegedly occurring on or about April 30, 2020 at 33 Locust Street.

Defendant was charged in Count 10 of the old indictment, together with Philip Flowers, with possession with intent to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2, allegedly occurring on or about April 30, 2020 at 33 Locust Street.

Defendant was charged in Count 11 of the old indictment with possession of firearm in furtherance of drug trafficking crimes, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2, allegedly occurring on or about April 30, 2020, at 33 Locust Street. The Court arraigned Defendant on the old indictment, and he entered a plea of not guilty to all charges. Defendant then filed an omnibus motion on or about December 29, 2020, and the Court heard oral arguments on February 25, 2021.

On March 25, 2021, the grand jury returned a superseding indictment 20-CR-6101 against 14 of Baker's original co-defendants and one other person. Baker was not named in this superseding indictment. Instead, he was indicted separately on March 25, 2021, in Indictment No. 21-CR-6042 (hereinafter "the indictment" or "the new indictment").

Defendant is charged in Count One of the new indictment along "with others, known and unknown to the Grand Jury," with conspiracy to possess with intent to distribute 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), allegedly occurring on or about August 2019 and April 30, 2020.

Count Two of the new indictment charges Baker, alone, with knowingly, intentionally, and unlawfully possessing with intent to distribute, and distributing, fentanyl, a Schedule II controlled substance on or about February 27, 2020.

Count Three of the new indictment charges Defendant with knowingly, intentionally, and unlawfully possessing with intent to distribute, and distributing, cocaine, a Schedule II controlled substance on or about March 19, 2020.

Count Four of the new indictment charges Defendant, alone, with knowingly, intentionally, and unlawfully possessing with intent to distribute fentanyl, a Schedule II controlled substance, allegedly occurring on or about April 30, 2020, at 33 Locust Street.

Count Five of the new indictment charges Baker, alone, with knowingly, intentionally, and unlawfully possessing with intent to distribute cocaine, a Schedule II controlled substance, allegedly occurring on or about April 30, 2020, at 33 Locust Street.

Count Six of the new indictment charges Baker, alone, with possession of firearm in furtherance of drug trafficking crimes, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2, allegedly occurring on or about April 30, 2020, at 33 Locust Street. The Court arraigned Baker on the new indictment and he entered not guilty pleas to all charges.

Defendant states that the government has provided voluntary discovery in the form of search warrants, search warrant reports, search warrant photos, surveillance reports, purported controlled "buy" reports, GPS tracker reports, criminal histories, wiretap data for co-defendant phones, and video surveillance of three locations that required a three-terabyte hard drive to contain it. Defendant further claims that most of discovery provided has absolutely nothing to do with him. He contends that the government's case against him rests on two controlled buys, the word of a confidential

4

source or sources, Baker's mere presence and association with others charged with crimes, and unsubstantiated assumptions. Defendant is charged with possession of a gun and drugs seized from a home to which Defendant claims he has no ties.

## DECISION AND ORDER

*Bill of Particulars*

Defendant has moved for an Order directing the government to provide him with a bill of particulars. The function of a bill of particulars is "to provide [the] defendant[s] with information about the details of the charge[s] against . . . [them] if this is necessary to the preparation of . . . [their] defense, and to avoid prejudicial surprise at trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990); *see also United States v. Persico*, 621 F. Supp. 842, 868 (S.D.N.Y. 1985). A bill of particulars is, accordingly, "not to be used as a general investigative tool for the defense, as a device to compel disclosure of the Government's evidence or its legal theory prior to trial, or to foreclose the Government from using proof it may develop as the trial approaches." *United States v. Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993). The government may therefore

> not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories . . . lest the defendant tailor his testimony to explain the Government's case.

*Id.* (citations omitted). Defendant's inquiries concern evidentiary details regarding the charges in the indictment. (Disc. Correspondence, ECF No 11-2.) The government has also filed a Fed. R. Crim. P. 12(b)(4) notice further detailing the evidence which the government intends to use against him at trial.

5

The indictment was preceded by a criminal complaint and supporting 171-page affidavit detailing much of the evidence against Defendant. The government proffered additional evidence against Defendant during the government's proffer of proof at the hearing on the government's motion for Defendant's pretrial detention.

All of this information provides Defendant with more than sufficient notice to prepare his defense and to avoid prejudicial surprise at trial. *Torres,* 901 F.2d at 234; *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) ("Generally, if the information sought by defendants is provided in the indictment or in some acceptable form, no bill of particulars is required."); *Jimenez*, 824 F. Supp. at 362 (bill of particulars not required even for information properly subject to further particularization where such information available through discovery or review of the indictment). The Court denies Defendant's various requests for a bill of particulars.

### *Discovery and Inspection*

Defendant has made the following six discovery demands.

a. Reports and recordings regarding controlled purchases from Defendant.

The government contends that the reports relating to the controlled purchases from Defendant have been turned over in discovery. Further, the government stated that the recordings from the body wire device worn by the CS[1] were made available to defense counsel to listen to, and defense counsel visited the U.S. Attorney's office and did listen to the recordings. (Gov't Mem. in Opp'n 7–8, ECF No. 11.) The government has concerns about the safety of cooperating defendants in this case and

---

[1] Confidential Source ("CS")

6

is withholding the actual recordings until such time as the trial court orders disclosure.

The Court denies Defendant's application for reports and recordings from controlled purchases. Evidence concerning witnesses who will testify at trial will need to be turned over in accordance with 18 U.S.C. § 3500, and generally in this District, the trial court will direct an earlier date.[2] Thus, the Court's denial is without prejudice—Defendant may raise the issue with the trial court at the time of the pretrial conference.

b. Lab reports.

The government states that some lab reports have been turned over and more will be turned over as they are received. (Gov't Mem. in Opp'n 8, ECF No. 11.) As with the prior demand, the Court denies this one without prejudice to renewal should the government fail to turn over further reports.

c. Co-conspirator statements.

Defendant is not entitled to copies of statements of co-conspirators. Should any of these co-conspirators agree to cooperate and testify at defendant's trial, then any such statements shall be turned over as *Jencks* material pursuant to the pretrial order.

---

[2] In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a government witness or prospective government witness (other than the defendant) shall be the subject of subp[o]ena, discovery, or inspection until said witness has testified on direct examination in the trial of the case. 18 U.S.C. § 3500(a).

d. Identity of confidential sources.

Defendant is not entitled to the identity of or information about the confidential sources used during the investigation in this case at this time. The government shall turn over information regarding these confidential sources, including the person who made controlled purchases from Defendant, at such time as the trial court orders disclosure of witness lists and impeachment material with respect to the government's witnesses. This information will include the CS's criminal history, if any, and any benefits extended to the CS.

e. Discovery regarding search of 20 Heidelberg Street.

The government states that it has turned over discovery regarding the search, including the search warrant, photos from the search and a report regarding the search. (Gov't Mem. in Opp'n 8–9, ECF No. 11.) The Court denies this demand without prejudice should Defendant learn that additional evidence has been withheld.

f. Reports relating to search of 20 Heidelberg and 33 Locust Street.

The government contends that these reports have been turned over in discovery. Thus, this demand is denied without prejudice.

## REPORT AND RECOMMENDATION

*Dismissal of Indictment*

The undersigned recommends that the Court deny the motion to dismiss the indictment. Defendant moves to dismiss the March 25, 2021, superseding indictment on the ground that he has been denied his rights under the Speedy Trial Act. The government opposes the motion.

8

The Speedy Trial Act, 18 U.S.C. § 3161(b), sets forth the time limit in which the government must seek an indictment: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested . . . ." Section 3162(a)(1) sets forth that the sanction for noncompliance with 3161(b): dismissal of the indictment.

Baker was arrested on April 30, 2020, based upon a complaint that was filed on April 28, 2020, charging him among others with conspiracy. Thereafter, Baker was indicted on or about July 16, 2020. On or about March 25, 2021, the grand jury returned a superseding indictment. Baker maintains that the superseding indictment filed on March 25, 2021, violated his speedy trial right because he was arrested in connection with those same charges on April 30, 2020.

Generally, section 3161(b) bars prosecution for the charges that were alleged in the complaint, when outside of the thirty-day time window. *See United States v. Napolitano*, 761 F.2d 137 (2d Cir. 1985). In addition, *Napolitano* held that the Speedy Trial Act did not bar later prosecution for different crimes even if the subsequent charges arose from the same criminal episode specified in the original complaint. However, where the government indicts for the same conduct for which Defendant had been arrested more than thirty days earlier, the charge must be dismissed. *See United States v. Gonzalez*, 748 F.2d 74 (2d Cir. 1984). The Second Circuit explained, though, that

> when a complaint charge and an indictment charge involve overlapping or even identical facts, dismissal is not warranted under § 3162(a)(1) if the indictment charge requires proof of elements distinct from or in addition to those necessary to prove the crimes pleaded in the complaint. Under such circumstances, the charge in the indictment is simply not

9

"'such charge'" as was pleaded in "'such complaint.'" *United States v. Napolitano*, 761 F.2d at 137 (quoting § 3162(a)(1)).[3]

*United States v. Gaskin*, 364 F.3d 438, 453 (2d Cir. 2004).

Baker's argument for dismissal is:

In this present case, the original Complaint, while charging the defendant Baker with the sole charge of Narcotic Conspiracy, outlined in detail facts that supported the government theory of narcotic conspiracy, including two separate controlled purchases. (See pages 45 and 46 of Complaint.) While these allegations in the Complaint of the two controlled purchases were offered in the Complaint as proof of the defendant Baker's participation in the narcotic conspiracy, the new superseding indictment presented them as separate charges, when they merely "gild" the charge in the original complaint.

(Def. Omnibus Mot. ¶ 59, ECF No. 10.)

Defendant's reference to "gild," pertains to the language in the Fifth Circuit case of *United States v. Bailey*, 111 F.3d 1229, 1236 (5th Cir. 1997), in which the appellate court wrote that "a gilded charge is one that merely annotates in more detail the same charge alleged in the initial accusatory instrument . . . ."

The April 28, 2020, complaint charged Baker and others with conspiracy to possess with intent to distribute 400 grams or more of fentanyl, one kilogram or more of heroin, and five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(a).

---

[3] Section 3161(a)(1) states in relevant part: "If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162.

The March 25, 2021, superseding indictment[4] charges Baker in Count Two with distribution of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), as well as 18 U.S.C. § 2. Count Three charges Baker with distribution of cocaine in violation of §§ 841(a)(1) and 841(b)(1)(C).[5]

When a superseding indictment contains new charges that are merely a part of, or if the new charge only "gilds" the initial charge, the new subsequent charges are subject to the Speedy Trial Act limitations imposed on the earlier indictment. *See United States v Bilotta*, 645 F. Supp. 369 (E.D.N.Y. 1986). In *Bilotta*, the district court determined that:

> An examination of the two sets of charges reveals that the superseding indictment is simply a more detailed version of the crimes described in the complaint; it is the completed canvas of the painting first etched in the complaint. Almost all the equipment that defendant is alleged in Counts One and Three of the superseding indictment to have conspired to export are mentioned either specifically or generically in the conspiracy sections of the complaint.

*Bilotta*, 645 F. Supp. at 371.

Even though the affidavit attached to the original complaint against Baker outlined in detail facts that supported the government's theory of narcotics conspiracy, including two separate controlled purchases, the accusatory instrument charged only conspiracy. The charges in the March 25, 2021, superseding indictment requires proof of elements distinct from or in addition to those necessary to prove the crimes pleaded in the complaint.

---

[4] The superseding indictment charges Baker in Count One with narcotics conspiracy in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B).

[5] The government construes Baker's motion to dismiss the indictment as only seeking dismissal of Counts Two and Three.

The elements of the conspiracy charged in the complaint would have required the government to prove the existence of a conspiracy, and that Defendant willfully joined it. *See United States v. Story*, 891 F.2d 988, 992 (2d Cir. 1989) ("The only elements of a section 846 narcotics conspiracy offense are the existence of a conspiracy and the defendant's willful joining it."). However, Counts Two and Three in the superseding indictment require the government to prove that Baker possessed a controlled substance, knew he possessed a controlled substance and intended to distribute, and did distribute the controlled substance. *See United States v. Gore*, 154 F.3d 34, 44 (2d Cir. 1998) ("To be liable for distribution, the government must prove beyond a reasonable doubt that the defendant 'knowingly and intentionally . . . distributed . . . a controlled substance.' 21 U.S.C. § 841(a)(1). Further, the essential elements of the crime of possession are that the defendant: (1) knowingly (2) possessed a controlled substance (3) with a specific intent to distribute it."). Taken all together, the Court cannot recommend that the indictment be dismissed.

### *Suppression of Inmate Calls*

The undersigned recommends the district judge not suppress the inmate calls. Title III generally forbids the intentional interception of wire communications, such as telephone calls, when done without court-ordered authorization. 18 U.S.C. §§ 2510-22. However, Title III allows for certain exceptions. Among them, the statute provides that "[i]t shall not be unlawful . . . for a person acting under color of law to intercept a wire, oral, or electronic communication, where . . . one of the parties to the communication has given prior consent to such interception." 18 U.S.C.

§ 2511(2)(c). Consent may be either express or implied. *United States v. Amen*, 831 F.2d 373, 378 (2d Cir. 1987).

The Second Circuit has held that prison inmates impliedly consent to have their telephone conversations monitored where they have received notice of the monitoring and nevertheless use the prison telephones. *See United States v. Willoughby*, 860 F.2d 15, 19–20 (2d Cir. 1988); *Amen*, 831 F.2d at 378–79. In *Amen*, the Second Circuit held that defendant inmates had impliedly consented to the monitoring and recording of their prison telephone conversations because they had received prior notice that such telephone conversations would be monitored. The types of notice given to the inmates included signs which were posted on the telephones used by inmates, which signs expressly notified the inmates that calls from the phones were subject to monitoring by the Bureau of Prisons. *Amen*, 831 F.2d at 379. Similarly, in *Willoughby*, the Second Circuit held that a combination of notification at an orientation lecture and signs near the telephones explaining the monitoring policy was sufficient to justify the inference of consent by prisoners who used the phones. *Willoughby*, 860 F.2d at 20.

According to Monroe County Jail personnel, there is a placard detailing dialing instructions and giving notification that the telephone call may be monitored or recorded affixed to each inmate phone at the Monroe County Jail. Each placard contains the following notice:

CALLS ARE SUBJECT TO MONITORING AND RECORDING

Additionally, whenever a phone call is placed from an inmate phone at the Monroe County Jail, once the person being called connects, a verbal warning is given

13

to both the inmate and the person being called which informs them that "this call is from a corrections facility and is subject to monitoring and recording." This verbal notification is played each time an inmate places a telephone call at the Monroe County Jail and the person being called accepts the call.

In *United States v. Anderson*, No. 10-CR-6128, ECF No. 247, 2012 WL 3648189 (W.D.N.Y. May 29, 2012) (Feldman, M.J.), R&R Adopted, 2012 WL 3648142 (W.D.N.Y. 2012) (Siragusa, D.J.), the court upheld the Monroe County Jail's system of recording and monitoring inmate telephone calls and denied Defendant's Title III and Fourth Amendment challenges to such recording and monitoring. In rejecting defendant's Title III challenge, the court reasoned as follows:

> As to the alleged Title III violation, Anderson's legal arguments are without merit. While it is clear that an inmate like Anderson is entitled to the protections afforded by Title III to be free from unauthorized interception of his telephone calls, *see United States v. Amen*, 831 F.2d at 378, no violation of Title III occurs where the inmate has consented to the interception. *United States v. Workman*, 80 F.3d 688, 692 (2d Cir.1992). Here, the Government has proffered, and the defendant does not dispute, that both jails at issue here gave a recorded verbal warning to the inmate at the beginning of the call that the telephone conversation may be recorded or monitored by jail officials. *See* Government's Memorandum in Opposition (hereinafter "Gov. Opp. Memo") (Docket # 185) at pp. 32–33. In addition, on each inmate phone at the Monroe County Jail there is a placard which states in bold capital letters: "ALL CALLS ARE SUBJECT TO MONITORING AND RECORDING." *Id.* at p. 32. Such notifications, when part of an established jail policy of which the inmate is aware, is sufficient to support a finding that the inmate impliedly consented to having his calls recorded. *United States v. Workman*, 80 F.3d at 693; *United States v. Willoughby*, 860 F.2d 15, 19–20 (2d Cir. 1988). I find that Anderson received notice that his telephone calls at the Maricopa County and Monroe County Jails would be recorded and monitored, he chose to make telephone calls despite these warnings, and, as a result, he impliedly consented to the recording and monitoring of his conversations.

*Anderson*, 2012 WL 3648189, at *4. *See also United States v. McAuley*, No. 11-CR-6083, 2014 WL 279207 *34-35 (W.D.N.Y. Jan. 17, 2014) (Payson, M.J.) ("I find that McAuley received clear notice at both the Justice Center and the Jamesville Facility that his telephone calls would be monitored or recorded; his decision to initiate telephone calls despite that notice establishes his implied consent to the recording and monitoring of his telephone calls. Accordingly, I recommend denial of McAuley's motion to suppress the telephone calls.").

Here, Baker had actual notice on the placard, and a verbal notice was repeated to him every time he made a phone call from the jail that his phone conversations were subject to monitoring and recording. By conducting the telephone conversations despite such notice, Baker gave implied consent to the recording and monitoring of such conversations. As such, and under the foregoing Second Circuit and Western District of New York case law, such monitoring and recording did not violate Title III. Thus, the undersigned recommends the district judge not suppress the inmate calls.

### *Suppression of Tangible Evidence*

The undersigned recommends that the district court deny the motion to suppress tangible evidence. Probable cause to search a place exists if the issuing judge "make[s] a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213,238, 103 S.Ct. 2317,76 L.Ed.2d 527 (1983). The standard is one of "probability, and not a prima facie showing of criminal activity . . . ." *United*

15

*States v. Travisano*, 724 F.2d 341, 346 (2d Cir. 1983). Probable cause "need not be based on direct, first-hand, or hard evidence." *United States v. Thomas*, 757 F.2d 1359, 1367 (2d Cir. 1985).

Once a search warrant has been issued, a reviewing court must accord substantial deference to the issuing judicial officer's prior finding of probable cause. The affidavit that supported the application "must be tested and interpreted by . . . courts in a common sense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108 (1965). The Second Circuit has summarized the principles that should guide a court in reviewing the probable cause determination of the judicial officer who issued the warrant:

> [The reviewing court's] after-the-fact examination of the papers is not to be de novo review. It should start with the proposition that the Magistrate's finding of probable cause is entitled to substantial deference. In fact, a search based upon a magistrate's determination will be upheld by a reviewing court on less persuasive evidence than would have justified a police officer acting on his own. Further, the magistrate's finding of probable cause is itself a substantial factor tending to uphold the validity of this warrant. This is particularly true in close cases where doubts should be resolved in favor of upholding the warrant.

*Travisano*, 724 F.2d at 345; *see also, United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993). This Court issued the search warrant for 20 Heidelberg having found that the affidavit submitted by DEA Special Agent Sabatino Smith established sufficient probable cause that the residence would contain evidence of criminal activity. Upon review, the Court finds no reason to determine that the search warrant application was deficient, or that DEA Special Agent Smith misled the Court. Accordingly, the undersigned recommends that the district judge deny the motion.

*Inspection of Grand Jury Minutes*

The Court recommends denying Defendant's motion to inspect grand jury minutes. Disclosure of grand jury materials is controlled by Fed. R. Crim. P. 6(e), which "was not designed as an authorization for pretrial discovery. Its purpose, on the contrary, is to protect the secrecy of the grand jury proceedings by restricting disclosure to the exceptional case where a particularized need is shown." *United States v. Weinstein*, 511 F.2d 622, 627 (2d Cir. 1975) (footnote omitted). A defendant has the burden of showing that his "particularized need" for grand jury notes of testimony outweighs the general policy of grand jury secrecy. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959). While Rule 6(e) does not insulate from disclosure all information presented to grand juries, it is clear that

> [t]he aim of the rule is to prevent disclosure of the way in which information was presented to the grand jury, the specific questions and inquiries of the grand jury, the deliberations and vote of the grand jury, the targets upon which the grand jury's suspicion focuses, and specific details of what took place before the grand jury.

*In re Grand Jury Investigation of Ven-Fuel*, 441 F. Supp. 1299, 1302–03 (M.D. Fla. 1977). This information is exactly what Defendant seeks. There has not been the slightest evidentiary showing to warrant Defendant's inquiry. Speculation and surmise as to what occurred before the grand jury is not a substitute for fact. *United States v. Wilson, supra*, 565 F. Supp. at 1436. A general desire, like Defendant's, to ferret out suspected improprieties or to demonstrate insufficiency of evidence does not warrant disclosure of grand jury materials. For example, even misinforming the grand jury as to the applicable law does not constitute grounds for dismissal of the indictment. *United States v. Beech-Nut Nutrition Corp.*, 659 F. Supp. 1487, 1499

17

(E.D.N.Y. 1987). Defendant's contention that the discovery provided to date does not sufficiently establish Defendant's guilt disregards ample evidence turned over in discovery and detailed in the 171-page affidavit of DEA Special Agent Sabatino Smith ("Smith Affidavit") in support of the criminal complaint against Defendant and his co-conspirators. The Smith Affidavit sets forth ample proof of Baker's criminal activity. *See* Smith Aff., ¶¶ 11, 29, 32–34, 102–12 (relating to two controlled purchases of drugs from Baker), 197–201, 237–42, 254–56, 284–96, 301–05. As reflected in paragraphs 102–07 of the Smith Affidavit, a confidential source ("CS") contacted Defendant and then met with him to purchase fentanyl. When the CS met with Defendant, Defendant then contacted another individual via phone and directed the CS to meet with that individual. The CS then went to the designated location and met with that other individual who handed the fentanyl to the CS. Significantly, after the hand-to-hand transaction with the third individual, the third individual drove to Baker's house at 20 Heidelberg Street. (Smith Aff., ¶ 107.) The third individual then drove to 33 Locust Street, later determined to be the residence of Philip Flowers. *Id*. The car, which the third individual used to meet with the CS, was driven to Baker's residence, then driven to 33 Locust Street. At the time of this February controlled purchase, a white Tahoe had the tag # JLW-6641. Subsequently, the registration was changed to the name of Philip Flowers with an address of 33 Locust Street, Rochester. (Smith Aff., 105, n. 15.) Thus, there is ample evidence as stated in the Smith Affidavit connecting Baker with original co-defendant and co-conspirator Philip Flowers.

As set forth in the Smith Affidavit, Defendant's contention that the proof is insufficient to convict is also premature. The grand jury indicted Baker for the

conspiracy and other charges. The indictment is valid on its face and is not subject to dismissal at this stage on the grounds of insufficiency of the evidence. *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998) ("[T]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss the indictment."); *United States v. Mazzariello*, 2015 WL 9244602 *4 (W.D.N.Y 2015) ("Defendants' arguments in this regard, which relate to the sufficiency of the evidence, the elements of the charges, the credibility of the witnesses, and potential affirmative defenses, are exclusively issues for trial and are not appropriately raised on a motion to dismiss."); *United States v. Ramos*, 2013 WL 1932110 (SDNY 2013) (Arcara, J.) ("there is no summary judgment procedure in criminal cases").

Moreover, Defendant's contention that he could not be criminally responsible for the drugs and guns found at Phillip Flowers' residence ignores the principals of aider and abettor and *Pinkerton*[6] liability as well as constructive possession, all of which render Baker criminally liable for the drugs and guns found at Phillip Flowers' residence. Defendant's argument of insufficient evidence should be raised on a motion to dismiss under Rule 29 at the close of the government's proof at trial or at closing argument at trial. For the reasons stated above, the Court recommends denying Defendant's motion to inspect grand jury minutes.

---

[6] *Pinkerton v. United States*, 328 U.S. 640 (1946)

## CONCLUSION

For the reasons stated above, the undersigned recommends that the district judge deny the portions of Defendant's Omnibus Motion (ECF No. 10) seeking an Order suppressing inmate calls, dismissing counts in the indictment, suppressing tangible evidence, and for inspection of grand jury minutes.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.

The district court will ordinarily refuse to consider on de novo review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

***Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order***. *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

IT IS SO ORDERED.

DATED:   February 17, 2022
         Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge