UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

        v.                                                                  **DECISION AND ORDER**

EARNEST BAKER, *a/k/a Slay*,                                    6:21-CR-06042 EAW

        Defendant.
_____

I. **BACKGROUND**

Defendant Earnest Baker ("Defendant") is charged by way of an indictment returned on March 25, 2021, with a narcotics conspiracy in violation of 21 U.S.C. § 846, distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2, distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), possession of fentanyl with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2, possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2, and possession of firearm in furtherance of drug trafficking crimes in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. (Dkt. 1).

Currently pending before the Court are Defendant's appeal from and objections to (Dkt. 61) an Amended Decision and Order and Report and Recommendation[1] entered on February 17, 2022, by United States Magistrate Judge Mark W. Pedersen (Dkt. 58) (the "D&O and R&R"), to whom this Court referred all pretrial matters pursuant to 28 U.S.C.

---

[1] The original Decision and Order and Report and Recommendation was entered on February 14, 2022 (Dkt. 55), and was amended on February 17, 2022 (Dkt. 58).

§ 636(b)(1)(A)-(B) (Dkt. 3).  In the D&O and R&R, Judge Pedersen denied Defendant's discovery demands and request for a bill of particulars and recommended that the Court deny Defendant's motions to suppress inmate phone calls, to suppress tangible evidence, to dismiss certain counts in the indictment, and for inspection of grand jury minutes. (Dkt. 58 at 6-8, 20).  The Court assumes familiarity with the D&O and R&R for purposes of the instant Decision and Order.

Defendant appeals Judge Pedersen's denial of his request for a bill of particulars[2] and objects to Judge Pedersen's recommendations as to his remaining requests. (Dkt. 61 at 2).  The government filed a response to Defendant's appeal and objections on March 21, 2022. (Dkt. 62).  The Court held oral argument on March 29, 2022, at which time it orally denied all aspects of Defendant's appeal and objections except with respect to certain parts of Defendant's motion to suppress inmate phone calls, as to which it reserved decision. (*See* Dkt. 63).  The Court ordered the government to make a supplemental submission regarding any jail calls it sought to introduce at trial that were recorded after June 1, 2020. On April 11, 2022, the government filed supplemental papers regarding a phone call that occurred on March 28, 2022. (Dkt. 69).  At the appearance on May 2, 2022, the Court found that the call from March 28, 2022, was admissible. (*See* Dkt. 82).

---

[2]    Although Defendant's appeal and objections state that he "asks this Court to reverse the orders related to the bill of particulars and discovery demands" (Dkt. 61 at 2), defense counsel clarified at oral argument that Defendant was not appealing Judge Pedersen's orders with respect to discovery and inspection.

## II. DISCUSSION

### A. Standard of Review

A district court reviews any specific objections to a report and recommendation on a dispositive issue, such as a motion to suppress, under a *de novo* standard. Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). To trigger the *de novo* review standard, objections to a report and recommendation "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). "When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error.  Similarly, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review." *United States v. Peldomo*, No. 10-CR-0069 RRM ALC, 2010 WL 5071489, at *1 (E.D.N.Y. Dec. 7, 2010) (citations, quotation, and alteration omitted);

Any appeal from a non-dispositive decision by a magistrate judge is reviewed under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Feneziani*, No. 05-CR-290E, 2007 WL 1613630, at *1 (W.D.N.Y. June 1, 2007) (quoting *Garcia v. Teitler*, 443 F.3d 202, 211 (2d

Cir. 2006)). "This standard is highly deferential, imposes a heavy burden on the objecting party, and only permits reversal where the magistrate judge abused his discretion." *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 139 (E.D.N.Y. 2013) (quotations omitted); *see also S.E.C. v. Verdirarno*, 890 F. Supp. 2d 257, 266 (S.D.N.Y. 2011) ("The clearly erroneous standard is highly deferential, and magistrate judges are afforded broad discretion in resolving non-dispositive disputes. . . ." (quotation omitted)).

Having carefully reviewed the D&O and R&R, all submissions made by the parties before Judge Pedersen and the undersigned, and upon *de novo* review, the Court denies Defendant's appeal and objections and affirms and adopts the R&R in its entirety. As to all aspects of the appeal and objections other than the request to suppress inmate calls, the Court relies upon and incorporates herein the reasons set forth on the record on March 29, 2022, and May 2, 2022, and in the R&R and D&O. The Court provides its reasoning for its denial of Defendant's motion to suppress inmate calls below.

### B. Motion to Suppress Inmate Calls

It is well-established that "[i]n the prison setting, when the institution has advised inmates that their telephone calls will be monitored and has prominently posted a notice that their use of institutional telephones constitutes consent to this monitoring, the inmates' use of those telephones constitutes implied consent to the monitoring within the meaning of Title III." *United States v. Willoughby*, 860 F.2d 15, 19-20 (2d Cir. 1988) (quotation omitted); *see also United States v. Amen*, 831 F.2d 373, 379 (2d Cir. 1987) ("[The defendants] impliedly consented to the interception of their telephone calls by use of the

prison telephones. They were on notice of the prison's interception policy from at least four sources."). Relying on this long-standing case law, Judge Pedersen rejected Defendant's argument that his jail calls should be suppressed. (Dkt. 58 at 12-15). Judge Pedersen explained that: "there is a placard detailing dialing instructions and giving notification that the telephone call may be monitored or recorded affixed to each inmate phone at the Monroe County Jail[, where Defendant was housed at the time the calls at issue were made]. Each placard contains the following notice: CALLS ARE SUBJECT TO MONITORING AND RECORDING ." (*Id*. at 13). Moreover, "whenever a phone call is placed from an inmate phone at the Monroe County Jail, once the person being called connects, a verbal warning is given to both the inmate and the person being called which informs them that 'this call is from a corrections facility and is subject to monitoring and recording.'" (*Id*. at 13-14)[3].

Defendant objects to Judge Pedersen's conclusion regarding the jails calls, arguing that: (1) the implied consent recognized in *Willoughby* and *Amen* does not extend to recordings made for purposes of a criminal investigation; (2) requiring Defendant to

---

[3]  At the oral argument on March 29, 2022, the government indicated that the Monroe County Jail switched telephone providers in June of 2020, at which time the placards regarding recording were removed. In its supplemental papers filed on April 11, 2022, the government confirmed that even after the switch occurred, "all calls by Monroe County Jail inmates include an audible warning that the call is being recorded and is subject to monitoring. The warning is played to both parties before they are able to converse." (Dkt. 69 at 1-2). An inmate placing a call and the party receiving the call are advised that "THIS CALL IS NOT PRIVATE. IT WILL BE RECORDED AND MAY BE MONITORED. IF YOU BELIEVE THIS SHOULD BE A PRIVATE CALL, PLEASE HANG UP AND FOLLOW FACILITY INSTRUCTIONS TO REGISTER THIS NUMBER AS A PRIVATE NUMBER." (*Id*. at 2).

consent to recording in order to use the telephone violates his Fourth Amendment rights; and (3) even if Defendant did impliedly consent to the recording, such implied consent "had no impact on the reasonable expectation of privacy of the persons called." (Dkt. 61 at 7-9)[4]. These arguments are unpersuasive.

In connection with his first argument, Defendant cites *United States v. Green*, 842 F. Supp. 68 (W.D.N.Y. 1994) and *United States v. Cohen*, 796 F.2d 20 (2d Cir. 1986). (*See* Dkt. 61 at 8). However, these cases do not support Defendant's position. *Cohen*, which predates *Willoughby* and *Amen*, did not involve prison phone calls but was instead about prison cell searches. 796 F.2d at 21-22. Further, *Cohen* merely stands for the unremarkable proposition that it is not the case that "a pre-trial detainee retains no Fourth Amendment

---

[4] Defendant also asserts that the recordings should be suppressed because, "[u]pon information and belief, the recordings of the conversations intercepted in this case have not been sealed." (Dkt. 61 at 10). Defendant has apparently simply copied and pasted an argument he made before Judge Pedersen (*compare* Dkt. 10 at ¶¶ 101-102 *with* Dkt. 61 at 10), which is insufficient to trigger the *de novo* review standard. In any event, even upon *de novo* review, this argument lacks merit. Defendant has come forward with no actual proof regarding the manner in which the recordings at issue were made and maintained. More importantly, the cases that Defendant cites relate to sealing of recordings made pursuant to a court-authorized wiretap under Title III. Defendant has cited no cases extending the sealing requirements to recordings made pursuant to an exception to Title III such as the ones at issue in this case, nor does there appear to any basis for such an extension. *See generally United States v. Amanuel*, 615 F.3d 117, 124 (2d Cir. 2010) ("Based upon the plain language of the statute, records that do not comply with the recording requirements of the statute are not susceptible to sealing."); *see also United States v. Mendoza*, 574 F.2d 1373, 1377 (5th Cir. 1978) ("The sealing requirement of Section 2518(8)(a), by the literal wording of the statute, pertains only to recordings made pursuant to a judicial order authorizing the interception of a wire or oral communication. In this case judicial authorization to record the conversations was not necessary because the tapes were made with the consent of one of the parties to the conversations. . . ." (citations omitted)).

rights, regardless of the circumstances underlying the search." 796 F.2d at 23. Importantly, *Cohen* did not involve a search as to which there was consent.

*Green* actually supports the government's position. There, the court found that the defendant had impliedly consented to the recording of his phone calls because he was informed in an orientation handbook that his telephone conversations would be monitored and there were notices near the telephones stating the same, even though "the manual did not indicate that the calls would be tape-recorded, nor was any warning given that use of the phones constituted consent to the monitoring." 842 F. Supp. at 70-72 ("Based on my review of the transcripts and evidence submitted during the suppression hearing and the Second Circuit authority which defines the degree of notice necessary for implied consent under Title III, I am compelled to affirm the Magistrate Judge's recommended ruling that implied consent existed to record Green's telephone conversations for use in a criminal proceeding."). It was only in considering the alternative argument that "no warrant was required because the monitoring was conducted by an investigative or law enforcement officer in the ordinary course of his duties," *id*. at 72-73 (quotation omitted), that the *Green* court distinguished between recordings made for penological purposes and those made for investigatory purposes, *see id*. at 73 ("[T]he taping of Green's phone calls was not done for ordinary business reasons. Prison officials are given wide scope in determining what measures are necessary for their legitimate task of maintaining prison security. However, in this case the recording of Green's conversations was not done to advance prison security but rather to gather evidence in a criminal investigation."). At no point does the *Green* decision suggest that the implied consent recognized in *Willoughby* and *Amen* does not

encompass calls that are used in a subsequent criminal prosecution. Further, in *United States v. Workman*, 80 F.3d 688 (2d Cir. 1996), the Second Circuit affirmed the holding in *Green* that "[w]hen an inmate has repeatedly received notice that calls placed on prison telephones are subject to surveillance, the evidence indicates that he is in fact aware of the monitoring program, and he nevertheless uses the telephones, by that use he impliedly consents to be monitored for purposes of Title III" and that it was "of no importance" that "neither the sign near the telephone nor the inmate handbook provided to him expressly stated that the monitoring program might include recording." *Id*. at 693.

The Court has not found in its own research any case drawing the distinction Defendant urges in this case, nor does there seem to be any legitimate reason to make such a distinction. The implied consent recognized by *Willoughby* and *Amen* is not conditioned on the purpose for which the record calls are used, but on appropriate notice having been given.

Defendant's second and third arguments are meritless. As to his second argument, the Second Circuit rejected this Fourth Amendment claim in *Amen*: "Appellants' argument that taping their conversations violated the Fourth Amendment is also not compelling. . . . If security concerns can justify strip and body-cavity searches, . . . then surely it is reasonable to monitor prisoners' telephone conversations, particularly where they are told that the conversations are being monitored." 831 F.2d at 379 (citations omitted); *see also United States v. Anderson,* No. 10-CR-6128, 2012 WL 3648189, at *4 (W.D.N.Y. May 29, 2012) ("As to Anderson's Fourth Amendment claim, Second Circuit precedent has long held that prison inmates do not have a reasonable expectation of privacy

in their phone calls."), *adopted*, 2012 WL 3648142 (W.D.N.Y. Aug. 23, 2012). Further, in *Willoughby*, the Second Circuit expressly held that this ruling also includes pretrial detainees. 860 F.2d at 21 ("Even if Quintin and Montgomery were merely pretrial detainees, however, the Fourth Amendment challenge to the interception of Quintin's telephone call to Willoughby must be rejected. Although pretrial detainees may have some residual privacy interests that are protected by the Fourth Amendment, the maintenance of prison security and the preservation of institutional order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees. . . . In all the circumstances, including the fact that inmates receive ample notice that such interceptions will occur . . ., we conclude that [a correctional facility's] practice of automatically taping and randomly monitoring telephone calls of inmates in the interest of institutional security is not an unreasonable invasion of the privacy rights of pretrial detainees." (quotation and citations omitted)). Defendant has come forward with no reason to question this long-standing Second Circuit precedent.

As to Defendant's third argument, again, the Second Circuit rejected this argument in *Willoughby*: "Nor do we find merit in Willoughby's contention that his own privacy rights were entitled to greater protection than those of Quintin because he received Quintin's call in his home. Contacts between inmates and noninmates may justify otherwise impermissible intrusions into the noninmates' privacy. . . . Given the institution's strong interest in preserving security, we conclude that the interception of calls from inmates to noninmates does not violate the privacy rights of the noninmates." *Id*. at

21-22. Nothing before the Court would justify disregarding this clear Second Circuit ruling.

For all these reasons, as well as the reasons set forth in more detail on the record at the appearances on March 29, 2022, and May 2, 2022, the Court denies Defendant's motion to suppress inmate phone calls.

## IV. CONCLUSION

For the foregoing reasons, as well as the reasons set forth in more detail on the record at the appearances on March 29, 2022, and May 2, 2022, Defendant's appeal of and objections to the D&O and R&R are denied.  The Court adopts the D&O and R&R (Dkt. 58) in its entirety.  Defendant's motions for a bill of particulars, to suppress inmate phone calls, to suppress tangible evidence, to dismiss certain counts of the indictment, and for inspection of grand jury minutes (Dkt. 10) are denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  May 12, 2022
        Rochester, New York