UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                v.

EARNEST BAKER a/k/a Slay,

                Defendant.
_____

**DECISION AND ORDER**

6:21-CR-06042 EAW

## I. INTRODUCTION

Defendant Earnest Baker ("Defendant") was charged by way of an indictment returned on March 25, 2021, with six counts involving alleged drug trafficking and possession of a firearm in furtherance of those activities. (Dkt. 1).[1] A jury trial commenced on May 12, 2022, and continued until June 9, 2022, when the jury returned a verdict finding Defendant guilty of counts one, two, and three of the indictment. (Dkt. 128). On June 22, 2022, Defendant timely filed a motion for acquittal or new trial, pursuant to Rules 29 and 33 of the Federal

---

[1] Defendant was initially charged along with various co-defendants by way of a criminal complaint filed on April 28, 2020, in Case No. 6:20-cr-06101. Although initially indicted in that case (*see* Indictment, *United States v. Gonzalez-Rivera*, Case No. 6:20-cr-06101, Dkt. 138 (W.D.N.Y. Jul. 16, 2020)), the government ultimately elected to pursue the charges against Defendant separately from his co-defendants, prompted in part by Defendant's filing of a motion for severance (*see* Motion for Severance, *United States v. Gonzalez-Rivera*, Case No. 6:20-cr-06101, Dkt. 274 at 39-41 (W.D.N.Y. Dec. 29, 2020)). Notwithstanding the severance of the charges against Defendant, the Court refers to the other defendants in Case No. 6:20-cr-06101 as co-defendants.

Rules of Criminal Procedure. (Dkt. 132). The underlying facts of the case and procedural history are briefly discussed below, but familiarity with the same is assumed for purposes of this Decision and Order. The Court has carefully reviewed the issues raised by Defendant and concludes that the pending motion should be denied for the reasons set forth herein.

II.   **BACKGROUND**

The six counts in the indictment charged Defendant as follows:

(1)   Count one charged a narcotics distribution conspiracy between August 2019 and April 30, 2020, involving 40 grams or more of a mixture and substance containing a detectable amount of fentanyl and 500 grams or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), all in violation of 21 U.S.C. § 846;

(2)   Count two charged distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 related to a controlled buy on February 27, 2020, involving a confidential informant ("the CI");

(3)   Count three charged distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) related to a controlled buy on March 19, 2020, involving the CI;

(4)   Count four charged possession of fentanyl with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 related to evidence recovered during execution of a search warrant at 33 Locust Street, Rochester, New York ("33 Locust"), on April 30, 2020;

(5)   Count five charged possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 related to evidence recovered during execution of a search warrant at 33 Locust on April 30, 2020; and

(6)   Count six charged possession of a firearm in furtherance of the drug trafficking crimes charged in counts one, four and five, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2, related to recovery of a firearm during the search warrant execution at 33 Locust on April 30, 2020.

(Dkt. 1).

At trial, the government presented approximately 30 witnesses, including: various law enforcement witnesses who testified concerning the investigation and surveillance involving Defendant and others allegedly involved in the drug trafficking organization; various witnesses from the DEA Northeast Laboratory who testified concerning their examination of narcotics seized in the case; the CI who testified concerning two controlled buys involving Defendant; co-defendant Natasha Figueroa ("Figueroa") who was involved in an intimate relationship with Defendant and who along with her sister, co-defendant Marilin Deleon ("Deleon"), both testified about their involvement in the drug trafficking operation; and Jenneleise Jimenez ("Jimenez"), Defendant's ex-wife and mother of one of his children, who testified to a telephone call with Defendant after his arrest involving instructions by Defendant related to 33 Locust. The government also introduced into evidence various forms of documentary proof, text messages, physical evidence, audio recordings, and video recordings. Defendant did not present a defense case.

After deliberating over the course of three days, the jury returned a verdict finding Defendant guilty of counts one through three, and acquitting him of the crimes charged in counts four through six. (Dkt. 128).[2] The jury found that the narcotics conspiracy charged in

---

[2] The jury also returned a verdict finding that the government proved the allegations in the indictment concerning Defendant's prior convictions involving a serious drug felony and serious violent felony, which consistent with the First Step Act of 2018, Pub. L. 115-391, 132

count one involved 40 grams or more of fentanyl and less than 500 grams of cocaine. (*Id*.). Sentencing is currently scheduled for March 15, 2023. (Dkt. 174).

On June 22, 2022, Defendant filed the pending motion pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. (Dkt. 132). Defendant argues that the evidence was insufficient to support the convictions on counts one through three, thus justifying a judgment of acquittal in his favor or alternatively a new trial. The government filed its response in opposition on July 15, 2022 (Dkt. 139), and Defendant filed a reply on July 26, 2022 (Dkt. 140). Argument on the pending motion was held before the undersigned on September 7, 2022, at which time the Court reserved decision. (Dkt. 150).

### III. RULE 29 MOTION

#### A. Legal Standard

Rule 29(c)(1) of the Federal Rules of Criminal Procedure provides that "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict. . . ." The standard on a motion for a judgment of acquittal is stringent, and a defendant claiming that he was convicted based on insufficient evidence "bears a very heavy burden." *United States v. Blackwood*, 366 F. App'x 207, 209 (2d Cir. 2010) (quoting *United States v. Desena*, 287 F.3d 170, 177 (2d Cir. 2002)). "In considering a motion for judgment of acquittal, the court must view the evidence presented in the light most favorable to the

---

Stat. 5194, increases the potential penalties that Defendant faces for his conviction on the narcotics conspiracy charged in count one of the indictment. (*See* Dkt. 129).

government." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999). Accordingly, "[a]ll permissible inferences must be drawn in the government's favor." *Id*.

"If *any* rational trier of fact could have found the essential elements of the crime, the conviction must stand." *United States v. Puzzo*, 928 F.2d 1356, 1361 (2d Cir. 1991) (quotation omitted). "The test is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt." *Id*. (quotation omitted). The evidence must be viewed "in its totality, not in isolation," *United States v. Huezo*, 546 F.3d 174, 178 (2d Cir. 2008) (citation omitted), "as each fact may gain color from others," *Guadagna*, 183 F.3d at 130. The Court may enter a judgment of acquittal only if the evidence that the defendant committed the crime is "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id*. (citation omitted).

A district court must be careful not to usurp the role of the jury. "Rule 29(c) does not provide the trial court with an opportunity to 'substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury.'" *Id*. at 129 (alteration in original and quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984)). "A jury's verdict will be sustained if there is substantial evidence, taking the view most favorable to the government, to support it." *United States v. Nersesian*, 824 F.2d 1294, 1324 (2d Cir. 1987). The government is not required "to preclude every reasonable

hypothesis which is consistent with innocence." *United States v. Chang An-Lo*, 851 F.2d 547, 554 (2d Cir. 1988) (citing *United States v. Fiore*, 821 F.2d 127, 128 (2d Cir. 1987)).

B.  Analysis

With respect to count one, Defendant contends that the evidence may have established the existence of a heroin conspiracy, but it did not establish the existence of a cocaine and/or fentanyl conspiracy. (Dkt. 132 at 6). Defendant further argues that because the jury "discredited the proof pertaining to 33 Locust," the evidence was insufficient for a finding of fentanyl in an amount greater than 40 grams. (*Id*.). Defendant also argues that even if a conspiracy was established, the evidence was insufficient to establish Defendant's membership in the conspiracy, contending specifically with respect to cocaine that the only proof was related to the March 19, 2020 controlled buy, and the existence of a mere buyer-seller relationship is insufficient to support a finding of conspiracy. (*Id*. at 7). The Court finds Defendant's arguments unconvincing for the reasons set forth below.

Figueroa's testimony at trial established that she worked for co-defendant Jancarlos Gonzalez-Rivera a/k/a Los ("Gonzalez-Rivera"), who was involved in an intimate relationship with her sister, Deleon, who also was involved in the drug trafficking operation. Figueroa testified that in mid-to-late 2019, she offered to her sister to help with Gonzalez-Rivera's drug-trafficking activities because she needed money. Figueroa first met Defendant on October 9, 2019, when Deleon directed her to meet him at a Walmart and deliver drugs to him. Figueroa testified that she also delivered drugs to Defendant on other occasions, as well

as to co-defendant Phillip Flowers a/k/a Cuzo ("Flowers"). Deleon's testimony corroborated Figueroa's testimony concerning her transactions, including the initial delivery of drugs at the Walmart to Defendant, as did various text messages that were introduced into evidence and pole camera video from 4 Florack Street, one of the main hubs of the conspiracy's operations.

The CI testified that he worked with Defendant at Lidestri Foods and he was involved in two controlled purchases of drugs from Defendant—one occurring on February 27, 2020, and involving Flowers along with Defendant and approximately 20 grams of a substance containing fentanyl; and the other occurring on March 19, 2020, and involving a substance containing approximately 60 grams of cocaine. These controlled purchases were corroborated by, among other things, audio recordings of the conversations involving the CI and Defendant on the dates in question, along with surveillance by law enforcement of the interactions.

Specifically, the evidence introduced at trial established that on February 27, 2020, the CI first met with Defendant in the area of Monroe Avenue in the City of Rochester. In the CI's presence, Defendant contacted Flowers and directed him to meet the CI at a Fastrac gas station, where the CI then acquired approximately 20 grams of a substance containing fentanyl from Flowers. Flowers was then observed by law enforcement driving to Defendant's residence at 20 Heidelberg Street in the City of Rochester, before ultimately returning to his residence at 33 Locust.

On March 19, 2020, the evidence established that the CI and Defendant again met in the area of Monroe Avenue in the City of Rochester, where the substance containing

approximately 60 grams of cocaine was purchased from Defendant by the CI. There was evidence introduced from law enforcement surveillance that the vehicle operated by Flowers (a white Chevy Tahoe) was at Defendant's residence shortly after the controlled buy of cocaine on March 19, 2020.

The evidence presented at trial established a close link between Defendant and Flowers related to drug trafficking activities, including video and audio recordings and law enforcement surveillance. Flowers resided at 33 Locust where a search warrant was executed on April 30, 2020, resulting in the seizure of approximately 370 grams of cocaine, 33 grams of fentanyl, a semi-automatic handgun and ammunition, and various drug packaging paraphernalia. As corroborated through the jail calls introduced into evidence and the testimony of Jimenez, Defendant directed his ex-wife to drive to 33 Locust after his arrest, and he was audibly distressed during the call upon learning that the location had been searched by law enforcement.

Viewing the evidence summarized above in the light most favorable to the government and with all permissible inferences drawn in the government's favor, the Court easily concludes that a rational trier of fact could have found the essential elements of the conspiracy proven beyond a reasonable doubt—namely, the existence of a conspiracy as charged to distribute fentanyl and cocaine and that Defendant knowingly and intentionally became a member of the conspiracy. *See United States v. Santos*, 541 F.3d 63, 71 (2d Cir. 2008) ("Once the existence of a conspiracy has been established, the government must prove that the person

charged 'knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it.'" (quoting *United States v. Rahman*, 189 F.3d 88, 123 (2d Cir. 1999))). "The evidence necessary to link a defendant to the conspiracy 'need not be overwhelming and may be circumstantial in nature.'" *United States v. Kemp*, No. 21-1684-CR, 2023 WL 405763, at *2 (2d Cir. Jan. 26, 2023) (quoting *United States v. Gaskin*, 364 F.3d 438, 460 (2d Cir. 2004)). "When a defendant challenges the sufficiency of the evidence in a conspiracy case, 'deference to the jury's findings is especially important . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel.'" *Santos*, 541 F.3d at 70 (alteration in original and quoting *United States v. Morgan*, 385 F.3d 196, 204 (2d Cir. 2004)).

Both the existence of the conspiracy, as well as Defendant's knowing and intentional participation in it, were established through witness testimony, text messages, audio and video recordings, and physical evidence recovered during execution of various search warrants, including at Defendant's and Flower's residences. In other words, this was not just a case of circumstantial evidence and reasonable inferences—which particularly in the context of a conspiracy can be sufficient—but involved direct evidence of the conspiracy from those who were involved in its operations.

With respect to Defendant's arguments about the drug quantity findings,[3] it is true that in a conspiracy such as the one charged in count one, which is punishable under 21 U.S.C. § 841(b)(1)(A), the government must also prove "that it was either known or reasonably foreseeable to the defendant that the conspiracy involved the drug type and quantity charged." *Santos*, 541 F.3d at 70-71. However, a rational jury could conclude that the government met that burden in this case based, in part, on the drugs seized at 33 Locust. Contrary to Defendant's arguments, the jury's finding with respect to counts four through six does not mean that the jury rejected the notion that Defendant was responsible for the drugs at 33 Locust as a member of the conspiracy.

Defendant was charged in counts four through six with substantive counts of possession related to the evidence seized at 33 Locust, which is not the same issue as whether the drugs located at 33 Locust were reasonably foreseeable to Defendant as a member of the conspiracy. It is well-established that "acquittal on a substantive charge does not prevent a conviction for a conspiracy to commit the offense substantively charged unless the necessary proof on the substantive charge is identical [to] that required to convict on the conspiracy count." *United States v. Chen*, 378 F.3d 151, 164 (2d Cir. 2004) (alteration in original and

---

[3] Defendant's argument assumes that the jury based its drug findings, in part, on the drugs recovered at 33 Locust. However, there was sufficient evidence in the record to support a finding supporting the drug amounts and type based on evidence outside of the drugs seized at 33 Locust. For instance, over one kilogram of a substance containing fentanyl was seized from 79 Branch Street where Deleon stored drugs for Gonzalez-Rivera. Moreover, there was plenty of evidence introduced about the prolific distribution of drugs by this drug trafficking organization outside of the evidence seized at 33 Locust.

quoting *United States v. Palmieri*, 456 F.2d 9, 12 (2d Cir. 1972)). As noted, counts four through six charged Defendant with possession of certain items (fentanyl, cocaine, and firearm) that were seized during execution of the search warrant on April 30, 2020, at 33 Locust. A finding of not guilty on counts four through six is not at all inconsistent with a finding that Defendant was a knowing and intentional member of the narcotics conspiracy charged in count one or that the drugs found at 33 Locust were known to or reasonably foreseeable to Defendant as a member of the conspiracy. The evidence demonstrated a close link between Defendant and Flowers and the involvement of Defendant and Flowers in drug distribution activities together, including their joint and active participation in the controlled buy of February 27, 2020. Thus, a reasonable jury could conclude that the evidence recovered at Flowers' residence—plainly depicting an active drug trafficking operation—was within the scope of the conspiracy and known or reasonably foreseeable to Defendant. Finding Defendant not guilty on the substantive counts related to the alleged possession with intent to distribute those drugs is not inconsistent with a finding that the drugs at 33 Locust were within the scope of a conspiracy. *See, e.g.*, *United States v. Ghailani*, 761 F. Supp. 2d 167, 193-94 (S.D.N.Y. 2011) (explaining that finding of not guilty on substantive counts, including under a *Pinkerton*[4] theory or aiding and abetting theory of liability, was not inconsistent with finding

---

[4]     *Pinkerton v. United States*, 328 U.S. 640 (1946).

of guilt on conspiracy count).⁵

In terms of Defendant's argument that the "only proof of Mr. Baker and cocaine concerned the March 19, 2020 controlled buy" and "the mere existence of a buyer-seller relationship is insufficient to establish membership in a conspiracy" (Dkt. 132 at 7), the jury was instructed that the mere existence of a buyer-seller relationship was insufficient to establish membership in a conspiracy. *Cf. United States v. Parker*, 554 F.3d 230, 235 (2d Cir. 2009) ("It is sometimes said that the buyer's agreement to buy from the seller and the seller's agreement to sell to the buyer cannot 'be the conspiracy to distribute, for it has no separate criminal object.'" (quoting *United States v. Wexler*, 522 F.3d 194, 208 (2d Cir. 2008)). A reasonable jury could conclude based on the evidence introduced at trial that the object of the conspiracy involved the distribution of cocaine—based on not just the controlled buy on March 19, 2020, but other evidence, including the evidence seized from 33 Locust which included cocaine and evidence of its trafficking. In other words, the controlled buy of cocaine was evidence of the object of the conspiracy to distribute cocaine—but the government's theory was not that the CI was a member of the conspiracy or that the March 19, 2020,

---

⁵ Even if there was some inconsistency between the jury's verdict with respect to the drug type and quantity findings on count one and its findings with respect to counts four through six, "it has long been established that inconsistency in jury verdicts of guilty on some counts and not guilty on others is not a ground for reversal of the verdicts of guilty." *United States v. Acosta*, 17 F.3d 538, 545 (2d Cir. 1994) (citations omitted); *see also United States v. Powell*, 469 U.S. 57, 67 (1984) ("[s]ufficiency-of-the evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt" as to each count independently).

controlled buy was itself the object of the conspiracy. *See id*. ("While providing that the unlawful transfer from seller to buyer cannot serve as the basis for a charge that the seller and buyer conspired with one another to make the illegal transfer from seller to buyer, the rule does not protect either the seller or buyer from a charge they conspired together to transfer drugs if the evidence supports a finding that they shared a conspiratorial purpose to advance other transfers, whether by the seller or by the buyer."). Again, the government's theory was not that Defendant (the seller) conspired with the CI (the buyer) to distribute cocaine, but rather that Defendant conspired with Flowers and others to distribute cocaine. This theory was supported by evidence that included information concerning the close relationship and interactions between Defendant and Flowers, the sale of cocaine by Defendant to the CI, the apparent presence of Flowers at Defendant's residence shortly after that sale, and the evidence of cocaine trafficking at Flowers' residence at 33 Locust Street.

With respect to Defendant's argument that a heroin conspiracy was proven but not a fentanyl conspiracy because "the proof advanced at trial established that it was heroin, and not fentanyl that Deleon believed she was storing, packaging, and distributing" (Dkt. 132 at 7), this argument misstates the evidence which (notwithstanding Deleon's apparent ignorance) supported the jury's findings that the conspiracy involved fentanyl. Moreover, "the government need not prove *scienter* as to drug *type* or *quantity* when a defendant personally and directly participates in a drug transaction underlying a conspiracy charge." *United States v. Andino*, 627 F.3d 41, 47 (2d Cir. 2010). Here, Defendant was directly

involved in a controlled buy of a substance containing fentanyl on February 27, 2020—and that controlled buy constituted evidence of Defendant's involvement in the conspiracy. Similarly, Defendant's personal involvement in the drug transactions was documented through other evidence introduced in the case, including the video surveillance of 4 Florack Street. Therefore, and in summary, there is no basis to grant Defendant's Rule 29 motion directed to count one.

Finally, for largely the same reasons outlined above, Defendant's Rule 29 motion directed to the jury's verdict with respect to counts two and three is denied. Distilled to its core, Defendant's motion directed to counts two and three reflects a disagreement with the credibility determinations reached by the jury concerning law enforcement witnesses and the CI.[6] Defendant raised these alleged inconsistencies and credibility issues at trial, and the jury's verdict reflected an apparent rejection of those arguments. Deference must be appropriately accorded the jury's resolution of credibility issues in favor of a guilty verdict.

---

[6] To the extent Defendant tries to attack the audio recordings of the controlled buys (*see* Dkt. 132 at 12 n. 1), he misstates the record by claiming that an audibility hearing was agreed to by the parties but never held. Defendant moved in his omnibus pretrial motions for an audibility hearing. (Dkt. 10 at ¶¶ 44-48). At the oral argument before the assigned magistrate judge on June 17, 2021, defense counsel represented that he had just received transcripts of the audio recordings and needed to review them. The assigned magistrate judge indicated that he was therefore going to deny the request without prejudice to renewal if upon further review defense counsel determined that there was an audibility issue. Defense counsel agreed he had no objection to this approach, and the magistrate judge's ruling is reflected in his written order dated June 24, 2021. (Dkt. 16). Defendant never renewed his request for an audibility hearing, and in fact in advance of trial agreed that the transcripts prepared by the government of the audio recordings were accurate.

*See United States v. Pugh*, 945 F.3d 9, 19 (2d Cir. 2019) ("The reviewing court must 'defer[] to the jury's assessment of witness credibility and its assessment of the weight of the evidence.'" (alteration in original and quoting *United States v. Baker*, 899 F.3d 123, 129 (2d Cir. 2018))); *United States v. Riggi*, 541 F.3d 94, 108 (2d Cir. 2008) ("All issues of credibility, including the credibility of a cooperating witness, must be resolved in favor of the jury's verdict."); *United States v. Glenn*, 312 F.3d 58, 64 (2d Cir. 2002) (reviewing court must defer to "the jury's resolution of conflicting testimony" even where it is "pock-marked with inconsistencies" (citation omitted)).

For the foregoing reasons, Defendant's motion pursuant to Rule 29 is denied.

## IV.  RULE 33 MOTION

### A.  Legal Standard

Rule 33 of the Federal Rules of Criminal Procedure allows a court to vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33. . . ." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (further explaining that "a district court must find that there is a real concern that an innocent person may have been convicted" (internal quotation and citation omitted)).

The Second Circuit recently reiterated: "While we have held that a district court may grant a new trial if the evidence does not support the verdict, we have emphasized that such action must be done sparingly and in the most extraordinary circumstances." *United States v. Archer*, 977 F.3d 181, 187 (2d Cir. 2020) (internal quotations omitted). The court clarified that "a district court may not grant a Rule 33 motion based on the weight of the evidence alone unless the evidence preponderates heavily against the verdict to such an extent that it would be 'manifest injustice' to let the verdict stand." *Id*. at 188. The court went on to further explain:

> We stress that, under this standard, a district court may not 'reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.' To the contrary, absent a situation in which the evidence was 'patently incredible or defie[d] physical realities,' or where an evidentiary or instructional error compromised the reliability of the verdict, a district court must 'defer to the jury's resolution of conflicting evidence.' And, as it must do under Rule 29, a district court faced with a Rule 33 motion must be careful to consider any reliable trial evidence as a whole, rather than on a piecemeal basis.

*Id*. at 188-89 (citations omitted and alteration in original).

B. <u>Analysis</u>

The crux of Defendant's argument in connection with his Rule 33 motion is that the testimony of the CI, Figueroa, and to some extent Deleon was not credible. (Dkt. 132 at 14-17). However, the Court disagrees with Defendant's assessment of the evidence and credibility of the witnesses. The evidence of Defendant's guilt produced at trial was significant. To be sure, there were some inconsistencies in the testimony of the cooperating

witnesses and they each had impeachable evidence that was brought out at trial going to their motivations and conduct. But their testimony was corroborated by other evidence in the case, including audio recordings, video recordings, and text messages. It was also corroborated by the extensive law enforcement surveillance, and the Court found the law enforcement witnesses to be candid and accurate in their descriptions of the events in question. Thus, this is not the rare case where the jury's resolution of conflicting evidence and assessment of witness credibility should be disregarded. *See Ferguson*, 246 F.3d at 133-34 ("[I]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." (citation omitted)). The jury's verdict reflected a careful evaluation of the evidence and it would be unjust for this Court to set it aside and grant a retrial. As a result, Defendant's request for a new trial pursuant to Rule 33 is denied.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for acquittal or alternatively a new trial (Dkt. 132) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 15, 2023
Rochester, New York