Western District Of
New York

Case NO: 21-Cr-6042 EAW

 

I Earnest Baker, here by come to you as a pruse litigant
under this 2255 habeas curpes declear under penalty of perjury, that
each & every Claim that has been raised is true to the best of my
Knuwledge.

*Ceeest K. Baker*

Dec. 8. 2025

Western District of
New York


Case No: 21-cr-6042 EAW


Now comes Earnest Baker, pro se litigant seeking relief from this court under this 2255 habeas corpus. Requesting this court to vacate, set aside or correct the sentence imposed upon.


Issues presented for review: Ineffective assistence
                              Prosecutorial Misconduct
                              Multiple Conspiracy
                              Conspiracy
                              Variance
                              Constitutional Speedy Trial.

Ineffective Assistance        Summary

Defense counsel misapprehended the law surrounding the Speedy trial motions practice, which prejudiced his client during critical points of his trial. The right to a Speedy trial is a foundation of the Constitution & the lack of defense counsel's understanding surrounding these rights renders his preformance deficiant.

In addition to misunderstanding Speedy trial law, defense counsel allowed critical evidence at the 11ᵗʰ hour to go unchallenged, when this timing was used as a tactical advantage by the prosecution & was a direct Score in favor of the defense. The truth of Agent Sullivan's & MR Baker's, Chain of Custody evidence is a genuine concern. We simply just do not know the depth & scope of Agent Sullivan's misconduct. Had Sullivan's tendency to smuggle drugs been challenged properly the evidence involving 33 Locust St. Would have had a significant probability of being excluded. Exspecially since defense counsel was provided this critical impechment material mere weeks before trial.

Furthermore, MR. Baker, directly requested defense counsel to file specific motions that was material effective to his defense, & although defense counsel did do as requested, he failed to properly persue them. Such as renewal of Audibility hearing, as well as prosecutorial misconduct & Challenging the goverments Multiple conspiracy argument.

Finally although MR. Baker, never requested defense counsel, to move for an evidentuary hearing. But for defense counsel lack of understanding as to how MR. Baker was being charged for anything not found in his possesion, the proper remedy to do so would be by requesting an evidentuary hearing.

"It was defense counsel's obligation to know the distinct difference between the speedy-trial Act & the Constitutional Speedy Trial law. This being a question of law (counsel has a duty to make reasonable investigations or to make reasonable decisions that makes particular investigations unnecessary) Strickland v. Washington, 466 U.S. 668, 691, 80 L. Ed. 2d 674 (1981) But this reasonable assistence has to be relative toward MR. Baker's, unique needs at the moment (the relevant question is not whether counsel's actions were reasonable, but whether there is any reasonable argument that counsel satisfied "strickland's" deferential standard) Rivas. v. Fisher, 780 F. 3rd 529 (2d cir 2015)

1

Discussion

Earnest Baker's right to a Speedy Trial was never assumed. Constitutional practice has grown to become more complicated then originated; although there has been a little hair-splitting regarding the difference between "Statuary" & "Constitutional" Speedy trial rights, but none of the questions of law, misapplied by defense Counsel were the fault of MR. Baker, (See also. Klopfer V. NC. 386 U.S. 213 (1967)

The Sixth Amendment provides that, in all criminal prosecutions, the accused shall enjoy the right to a Speedy & public trial." U.S. Cont. Amend. VI." The Speedy Trial guarantee is binding on the States through due process Clause of the Fourteenth Amendment. (See Klopfer V. N.C. 386 U.S. 213, 222-23 (1967) See also Smith V. Hovey, 393 U.S. 374, 377 (1967) (State must provide Speedy trial even when a defendent is in Federal prison) But MR. Baker's, Speedy trial guarantee was never protected in earnest by defense Counsel, government nor Magistrate.

Alas, the Sixth Amendment provides a fundamental right to Speedy trial that serves to (1) protect undue & oppresive incarceration prior to trial; (2) minimize anxiety & Concern accompanying public accusation; (3) limit the possibilities that long delay will impair the ability of an accused to [present a defense] United States v. Ewell, 383 U.S. 11, 120 (1966) The right to a Speedy Trial attaches at the time of arrest of formal charge, which ever comes first. The remedy for a violation of this is to dismiss the indictment & vacate any sentence that has been imposed. (See. Strunk V. United States, 412 U.S. 434, 440 (1973) vacating & dismissing Indictment ("only possible remedy" for a defendent denied right to Speedy trial.)

So far the post-conviction phase of MR. Baker's, appeal process, the effectiveness of defense Counsel has been left off the judicial scale. Even-though the bulk of the prejudice occured was through & through by defense Counsel's preformance 2 solid examples is how the district court as well as the appellete courts highlighted defense Counsel's errors.

1. "At argument, the district court specifically noted that Baker, had not raised a Constitutional Speedy trial Claim in his briefing & instructed Baker, that he must file motion addressing the Barker factors to raise constitutional Claim. But while Baker stated that he intended to do so, he never filed such a motion. And although Baker, points to one other occasion in which he

2

complained about the delay between first indictment & his post-severance indictment, he offers no other instances in which he demonstrated a desire to proceed promptly to trial. The record is insufficient to put the government on notice that there would be consequences. (See United States v. Baker, Docket No 23-6313-cr-(1), 23-6361-cr (con) Opinion page 3. II (c)

     2. To the extent Defendant tries to attack the audio recordings of the controlled buys (see Dkt 132 at 12 n.1) (see February 17, 2022 Decision & order) The court denies Defendants application for reports & recordings from controlled purchases.

     Defense counsel misapplied a vital conclusion of law which caused him the failure to properly assert MR. Bakers' "Constitutional Speedy trial guarentee disting- ursed from MR. Bakers," Statutory Speedy trial claim", the two having significant procedural & substantial protocals associated. Defense Counsel simply did not follow proper protocal, but he should have. By not doing so clearly prejudiced MR. Baker.

     The government, the Magistrate, the district court & the appellete court all were in unison that this failure by defense counsel was deficiant. But the question is, did it ~~pled~~ prejudice MR. Baker???

Prejudice -

     The effect of a proper constitutional challenge in MR. Bakers, favor would have been dismissal. Neither the Constitutional or the case law distin- guishes whether the successful invoke is guilty or not. In other words guilt does not preclude dismissal (not withstanding that MR. Baker, has consistently main- tained his innocence) Under "Strickland v. Washington", the magnitude of the errors defines the prejudice. The failure to invoke MR. Bakers, Constitutional right was not de minimus & the discussion at every level up to the appellete level demonstrates that this issue was material to MR. Bakers, due process

3

Revisiting the Barker factors, to determine whether a defendents right to speedy Trial has been violated, courts focus on four factors. (1) length of delay; (2) reason for delay; (3) whether, when & how the defendent asserted the speedy trial right; & (4) whether the defendent was prejudiced by the delay." Barker v. Wingo, 407 U.S. 514, 530-34 (1972) Again the matter of guilt being a non-factor.

Courts generally hold that a delay in excess of one year is presumptively prejudicial. Even after MR. Baker, case was severed (due to MR. Baker, desire to promptly proceed to trial) It took the government 2 years to agree for a trial. A full year beyond the presumed prejudice threshold. Every court, along with the government, found fault with the defense counsel's procedural posture. The defendent affirmed he wanted to have a speedy trial on every occasion that he & counsel met. Indeed at no junction did MR. Baker, communicate that he intended to forego his guarentee speedy trial right. The government cannot establish otherwise.

On April 30, 2020 MR. Baker, was asked by court whether he understood the procedural developements thus far.? MR. Baker, expressly stood before the court & affirmed his desire to maintain his vested right to a constitutional speedy trial;

when asked to MR. Baker, directly, it is expressly clear that he maintained a desire to "proceed promptly to trial." It was none other than defense counsel's failure to preserve MR. Baker's, Constitutional Claim, properly which prejudiced MR. Baker, proceedural due process. Additionally this deficient preformance cannot be viewed as de minimus.

Given this right is secured by the Constitution demonstrates its importance. Second, speedy trial protections were put in place to avoid "undue & oppresive incarceration" prior to trial; minimize anxiety & concern accompanying public accusation & limit the possibilities that long delay will impair the ability of the accused to present a proper defense, Ewell at 116, 120

Adding to the score, the length with which the district's appellete courts expanded explaining the law surrounding speedy trial practice highlights, its material importance. Thus, the failure to force-fully advocate MR. Bakers, "Constitutional Speedy" right, when requested to address the Barker factors, was a clear deficiant preformance & prejudice to MR. Bakers, due process assurance to effective assistence with all critical points during his case.

From the onset defense counsel was made directly aware that MR. Baker, wanted a speedy trial. Defense counsel told MR. Baker, that "proper channels had to be followed" (discovery & motions) At no time did counsel place courts on notice of MR. Baker's desire to have a just & speedy trial.

Upon failing, to do so, after speaking to defense counsel on multiple occasions, MR. Baker, filed a complaint to the attorney grievence committee, regarding defense counsel requesting post-ponements without consulting with MR. Baker, as well as failing to request a speedy trial date. Such complaint prompt defense counsel to notify courts of conflict. (see A-1745)

Defense counsel stated in direct appeal brief "pg25 Line 11" He desperately wanted his day in court & he let the magistrate know himself."... Therefor if counsel understood that MR. Baker, desperately wanted his day in court, why did MR. Baker, have to take it upon himself & address the courts???

Additionally upon defense counsel, filing 2nd omnibus motions, MR. Baker directly asked counsel, was he raising a Constitutional Speedy trial as well as the Speedy trial Act??? Counsel stated, "I'm raising both, you can't have one without the other! you can't violate the speedy trial Act without violating the Constitutional Speedy trial," "to read the arguments 'head line' "Speedy Trial violation".

Which was directly unclear to MR. Baker, until Magistrate denied argument adapting it soely as being a speedy trial act violation. Which prompt Baker, request to appeal Magistrates decision & properly place the district court on notice of Constitutional Speedy trial. In fact were defense Counsel still failed as he did not lay out the Barker factors as required, & requested by the district court.

5

Agent Sullivan-

    The government hid critical information surrounding one of its crooked cops, until weeks before trial as a tactical advance & as an intentional act to frustrate the defense case, with a just & transparent obligation, the government knew that MR. Baker, was affirmately seeking to proceed promptly to trial, yet the attorney for the government hid Sullivans, misconduct from the defense. This can not be law.

    Agent Sullivans, report is at the heart of the governments case, thus its at the heart of the defense case as well. Sullivan was the lead investigater (ironically placed in charge of evidence collection from 33 Locust St. Defense should have subpoened him to secure his testimony before the jury about his 33 Locust St. report. He would have told the jury (1) MR. Baker, was never seen at 33 Locust St. date of finding evidence (2) when evidence was turned over to office (3) why evidence was not logged into safe keeping until 2pm (4) if the evidence was ever tested prior to arrival in office (5) clearified whether or not his misconduct impacted MR. Bakers case; (6) whether or not his chain of custody was sound as the government alleged it to be? without more, we are left to speculate.

    The temptation of the government to hide Sullivan from the jury was foreseeable, It didn't take much reasoning to anticipate this. And no effective representation would have left Sullivans testimony to chance. Defense counsel attempted to capture the importance of Sullivans testimony, a day late & a dollar short, within his appellete brief;

    (pg 11 App brf)    "Glaringly absent from the trial was DEA John Sulliva

    Defense counsel seems to find blame with the government for not producing Sullivan, However, Agent Sullivan, was only "absent" because defense counsel did not take the proper steps to ensure his testimony at trial. Agent Sullivans report was at a center peice of the defense case. This theory being corrupt cops colluding to entangle MR. Baker, within the los conspiracy due to his mere affiliation with los, not a knowing & willing participant in the los conspiracy with this being backdrop, the following highlights, this was defense theory.

Q- But you have to refer to Agent Sullivan correct? You have to rely on agent Sullivans word correct?

A- Thats correct.

Q- You dont have any other Knowledge about what time this item might have been seized?

A- I do not.

Q- And there is no other report that detail when these items were seized?

A- Not that I Know of.

A- There were prescription pill bottles found in his drawer, There was suspected fentanyl found in his drawer, there was pole camera footage from another investigation found in his drawer. I believe there was an empty evidence bag that was --- that became a part of our administrative evidence that should have been put into evidence at the time. (A-2640) (defense supp brf pg 11·12)

The poisonous fruit allegation is not a hyperbolic one. Corruption was a real factor with persons acting on behalf of the law enforcement & the good faith exception should not shield in the instance. To be clear, the government did not give the jury the full picture of MR. Bakers case. Indeed the lead Agent responsible for collecting "evidence at 33 Locust st. butt was found with his hand in the cookie jar. But the government didnt have enough confidence with its case for him to come tell his facts to the jury. Sullivan not only mishandled evidence, there was also items found within his possesion hinting unauthorized law enforcement activities without supervisory approval. The jury deserved to know why, there was pole camera footage from another investigation found in his drawer. "Even more important, they deserved to hear whether or not MR. Bakers, case was unaffected by his clear misconduct.

Furthermore, his possesion of fentanyl & prescription pills aside, there seemed to be a credible suspicion that caused the search & seizure of his personal items to begin with, which we still dont Know the scope & depth of.

Considering Special agent Sullivan, was the author of the report relied upon by agents at trial to testify ; to attempt to put together a chain of custody (See A-2632) Agents needed to rely upon the written word of Special agent Sullivan to try to recreate what took place (See A-2635) Sullivans, testimony was critical to the case of the defense. His testimony was favorable to the "defendent" Under the Brady v. Maryland, rule ; defense counsel was deficiant in failing to secure his apperance through subpeonas.

Furthering the point, Agent Sullivan was indeed likely to continue his "serious misconduct" within the "los conspiracy" ; MR. Baker, First the Conspiracy had a reputation for serious cash ; drugs. Considering Sullivans was known to fancy Fentanyl ; stake out high flying drug crews during his off-time the los conspiracy would have been a likely target for his misconduct. This being second, informant Mitchell was promised 20% of the proceeds if he helped bag the conspirators. This is an agreement that one would expect on a deck of a pirateship or back alley (as Mitchell testified he did not go into office to sign agreement) Somewhere, not by a self-respecting officer of the law. This alone, is a strong indicater of corruption. Last Sullivans corruption was so eggregious that his misconduct demonstrated a lack of proper oversight. Law enforcement agents consistently overlooked Sullivans evidence mishandling ; there is no evidence provided to this court that Sullivan's misconduct "did not" include MR. Bakers case.

The request still remains outstanding; what did the government know about the scope ; depth of agent Sullivans addiction to unauthorized drugs ; more important, when did the attorney for the government know it? (for speedy trial related perposes)

These are not unreasonable questions considering MR. Baker, has consistently alleged that the governments attorney hid information as a tactical device to manipulate the speedy trial right. Given the facts, defense counsel refusal to move for a Brady violation under Briglio v. U.S. was both deficiant pref preformance ; such deficiency prejudice MR. Bakers, case before the fact finders.

8

recordings. A proper audibility hearing would have afforded MR. Baker the clear opportunity to probe & investigate the audio recordings, as well as placing MR. Baker as well as the courts on notice of all of the defects there of which more than likely would have warranted an evidenciary hearing.

Outside of the multiple defects within the audio recordings, the fact that it was learned through the recordings that there was multiple speakers, & that the CS exited vehical multiple times, entered a fast track store (where NO surveiling agent could see him interacting with people outside of investigation). Furthering the point that NO surveiling agent witness CS enter nor EXH a white tube nor did they witness a transaction. (As testified to by all surveiling agents).

Furthermore defense counsel was afforded an opportunity long before trial to listen to the audio recordings. Upon doing its investigation should have directly taken notice that Mitchell exited his vehical & entered the Fasttrack Store location. Once learning of such should have enhanced defense counsels request of such hearing. By faceing to do so renderd defense counsel deficiant & such defercrancies prejudiced MR. Baker & his trial.

Multiple Conspiracy -

Defense counsel was deficiant for not properly addressing the multiple conspiracy instruction. Although defense counsel did properly raise the issue, he directly failed to object to the governments argument, clearly established through its response. (See A-1519- 1520) Establishing that MR. Baker conspired with MR. Flowers. When defense counsel held first hand knowledge that MR. Baker was never indicted for conspiring with MR. Flowers. But directly indicted for conspiring with "lus & the lus organization as provided in the arresting criminal Complaint & relied upon by governments atterney as MR. Bakers, Conspiracy. (See A-1805- A-1806 & A-133- A-304)

Therefer, for the governments atterney now establishing that MR. Baker conspired with MR. Flowers, within his email is clearly creating a direct multiple conspiracy, which is what prompted MR. Bakers, request to

10

begin with. (Attempting to produce a seperate conspiracy outside of the conspiracy originally alleged by guerments attorney)

Although MR. Baker, was the soul defendent listed within his indictment & the indictment listed known & unknown, we can not disregard MR. Baker, addressing the court as well as the guerments attorney at the arraignment of the superseeding indictment (See. A-1804-A-1806) As MR. Flowers, was never listed as being a co-conspirator to such conspiracy. (See. A-133-A-304) There for defense counsel having direct knowledge of such information & failing to properly object to the guerment attorney response to the request of the Multiple conspiracy instuction renderd defence counsel deficiant & such deficiancy prejudiced MR. Baker, & his trial.


Failure to Renew Prosecutorial Misconduct & inspection of Grand jury -

Defense was deficiant for failing to properly renew inspection of Grand jury & Prosecutorial misconduct, once he had access to the relevant portions of the grand jury transcripts to at advance MR. Baker's arguments. As defense should have known as quoted by "Appellete courts in opinion" "It is well settled that a guilty verdict at trial remedies only possible defects in the grand jury indictment". United States v. Sullivan, 118 F. 4th 170, 211 (2d 2024) (quoting United States v. Lombarduzzi, 491 F.3d 61, 80 (2d cir 2007) (See also Appellete opinion pg7 Footnote 5) ": But because he concedes that he had access to relevant portions of the grand jury transcripts & identifies no injury stemming from the timing of its recipts we conclude that this claim is moot. (See United States v. Blackburn, 461 F.3d 259, 261 (2dcir2006)

Direct failure not only just prejudiced MR. Baker on the appellete level, by directly prejudiced him & his defense. As defense counsel made such argument its focal point & the bulk of its argument at oral arguments on direct appeal. When defense counsel was clearly provided the same transcripts prior to trial, in an attempt to get MR. Baker to take a plea deal, (under a protective order that MR. Baker could not view them).

Defense counsel left Sullivans, apperance to chance & seemed suprized when Sullivan was absent from the governments case in cheif. Second the government delivered the information about Sullivan, mere weeks before trial. Defense counsel directly & deliberately requested in it's omnibus motions for all employee conduct of all participating agents & officers. Governments attorney knew first hand of Sullivan's eggregious misconduct & strategically held exclupatory evidence. This was an intentional device to demonstrate that (1) the delay was intentional (2) was a deploy at the 11th hour to frustrate the defense reparation for trial. This clearly demonstrated prejudice & had the defense asked for an continuance to probe the Sullivan, angle proper, the government attorney could advantage it's self by creating an argument that it was defense that stalled the speedy trial right, through discovery.

Audibility hearing –

Defense counsel requested an Audibility hearing for all recordings pretaining to the 2 controlled buys, in it's omnibus motions. The governments attorney agreed, the Magistrate court denied, without prejudice subject to renewal (See DKT 132)

Prior to trial MR. Baker, reminded defense counsel about the audibility hearing & lack of. Defense counsel advised MR. Baker, that "it was to late & that you would have to get me on ineffective assistence on that one".

The audio recordings became critical at trial & had defense counsel properly renewed audibility hearing request as the Magistrate provided. There was a grave chance that audility recordings would not been admitted at trial. By failing to do so prejudiced MR. Baker & it's trail. (1) recordings was alleged to have been provided from a personal cell phone (2) cell phone was never placed in evidence (3) there was never a testing of the cell phone (4) there was multiple speakers (5) there was muted or unitelligable conversations (6) there was loud music (7) there was suggestive body language or (hand signals claimed by cs) (8) cs exited vehrical multiple times (9) cs entered a Fast track store & interacting with people outside of investigation. (10) the transcripts provided were not synce w/audio

9

By being provided the transcripts prior to trial defense counsel was directly made aware of the material defects & multiple lies & misleading states provided by the governments attorney witness before the grand jury! Which was the same material defense counsel stood on at direct appeal oral argument "May 20, 2025", which prompted the courts to ask defense counsel multiple times "did you have these transcripts prior to trial"? As defense counsel conceded in so!! Although MR. Baker, totally agrees with the appellete courts desicion MR. Baker, stands to argue a seperate & most eggregious failure & prejudiced caused by not renewing such argument.

That being defense counsel being placed directly on notice that the governments witness (Agent Smith) directly testified that the "cs was provided a photo array with Flowers, photo on it the night of Febuary 27, 2020 controlled buy & the cs did not identify Flowers." Despite Agent Smith, excuses as to why cs possibly did not identify Flowers, the direct exculpatory evidence being Flowers, was not identified, as the 3rd party to the Febuary 27, 2020 controlled buy.

Although defense counsel did make the argument that "if Flowers, was never Identified as the person who sold cs drugs on Febuary 27, 2020, then how was MR. Baker being charged?" Because of the Fed. R. Crim. Pro 6(e) defense counsels argument was ruled out as speculation, which in some ways at the time it was! (See DKT 132) But once defense counsel was provided the transcripts, the argument of speculation can no longer stand & It should of been defense counsels duty to now, not just place MR. Baker on notice but further the district court as to such information. There for a just & proper investigation could have been properly persued. Exspecally being that, the governments attorney oral argument of MR. Baker, being indicted for anything found at "33 Locust St." in Flowers "direct possesion, was through the Febuary 27, 2020 controlled buy & the imfamous pinkerton theory.

For the defense counsel being placed on notice & directly being made aware, that MR. Flowers, was not identified at the March 25, 2021 grand jury proceedings, should had enhanced defense counsels request & persuing the prosecutors misconduct, due to the fact that MR. Baker, was clearly indicted in the "first" indictment "July 16, 2020", for "33 Locust st" items found in Flowers, possesion. (Apprx 8 months prior, to agent Smith, testifying that Flowers was not ID.)

Although the governments attorney attempted to produce circumstantial evidence to the Magistrate pretaining to the February 27, 2020 controlled buy as it's basis to deny defense request of inspection of grand jury transcripts. The governments attorney Knew first hand that there was direct exculpatory evidence given to the grand jury directly excluding, Flowers, out of the February 27, 2020 controlled buy, that they (Governments attorney) is providing to the magistrate as MR. Bakers, basis of being held accountable of Flowers, conduct under the Pinkerton theory. Such misconduct prejudiced MR. Baker ad the magistrate & district court level as magistrate solely adapts governments attorneys argument. (See DKT 132)

Had defense counsel directly pointed this out to the district court by renewing the prosecutorial misconduct argument, theres, NO question a just & proper evidentuary hearing would have been required. Exspecially given the true facts, on how the governments attorney mislead the magistrate court, through it's circumstantial argument when they Knew that there was exculpatory evidence provided to the grand jury. Therefor defense counsel was deficiant & such deficiancy clearly prejudiced MR. Baker on both the district court as well as the Appellete court.

Prosecutorial Misconduct -

The Prosecution Knowingly Presented false testimony to the Grand jury to secure MR. Bakers, Indictment...

Agent Smith told several lies to the grand jury which eventually grew Into several false conclussions which caused them to return a conspiracy indictment & 3 counts of possesion from 33 Locust St. That had not a sliver of evidence Showing (1) MR. Baker was a member of the los conspiracy (2) Baker was overlord & overseer of 33 Locust St. The most malicious being, Baker was the stash-house overseer. The prosecution was allowed to pitch that Baker utilized Flowers, as his Currier who inturn did Bakers bidding for him, that Baker set up drug meets & Flowers physically moves the drugs for "him", as well as 33 Locust St being Bakers "principle stash house" implying to the jury that there was more than one "stash" house under Bakers direct control that was being used mainly for drug operations. Additionally the jury was told that Baker, was seen going into 33 Locust St on multiple occasions. This to was a classless lie aimed to secure a constructive possesion based on the infamous Pinkerton theory doctine. And the attorney for the government should've known better.

Standard -

The prosecution ostensibly attempted to provide giglio material but failed to provide adequate justification why the exculpatory materials were delayed other than a tactical advantage, weeks prior to trial. And the false testimony provided to the grand jury was part & parcel of why the delay was so advantageous. Similar to a backyard oration; the prosecution didn't want the defense looking too far under the hud before trial.

A conviction must be set aside if (1) the prosecution actually Knew of "the witness" false testimony, & (2) there is any reasonable likelihood that the false testimony could have affected the judgement of the jury." Drake v. Portundo, 553 F. 3d 230, 241 (2d Cir. 2009)"

14

"We have interpreted Supreme Court precedents as holding that if it is established that the government knowingly permitted the introduction of false testimony, reversal is virtually automatic." The prosecution knew or should have known that (1) Baker never conspired with the Lus/Gonzalez organization (2) Baker never used Flowers as "his" currier (3) Flowers never did Bakers bidding for "him" (4) Flowers was never identified (5) Baker was never seen going into or out of 33 Locust street. (6) Baker never instructed anyone to take drugs in or out of any house (7) that the "principle stash house" narrative was without merit.

But the governments attorney misconduct did not start at the grand jury nor did it stop there. The governments attorneys misconduct was by far through & through, from the start to finish. As defense counsel for Baker screamed foul play as early as the first detention hearing as he pointed out that the arrest warrant supported by the criminal complaint was void of any evidence connecting Baker to the charged conspiracy. Despite the criminal complaint being void of any act of conspiray with Baker, the governments attorney attempted to point out to magistrate the 2 uncharged controlled buys dealing with a "CS" confidential source. (See first dententin hearing) At the second detention hearing despite the governments attorney knowing the arresting criminal complaint was void of any act of conspiracy by Baker, not only raised the argument of the 2 uncharged controlled buys, deliberately attempted to establish to the court a bogus claim from an unknown "jail house" informant that Baker was "plotting to murder" or have the cs "murdered". (Not supported by any evidence nor statements.) (see second detention hearing)

July 16, 2020, the grand jury returned an indictment charging Baker with the same conspiracy alleged in the criminal complaint affidavit along with 3 additional counts of possession from 33 Locust street. A pretrial motion date was set & at the earliest convience defense counsel for Baker attempted to place magistrate again on notice through its omnibus motions & directly at oral arguments, that the new discovery provided was into void of any connection of Baker & the indicted charges & that he wanted to provide Baker his Sixth Amendment constitutional right to effective

assistence of counsel but couldn't, because he could not tell Baker how he was being charged in the indictment "mainly" the possesion counts from 33 Locust Street as the discovery provided no connection between Baker & the items seized at 33 Locust Street. As the governments attorney for the first time attempted to raise the pinkerten theory standing on the uncharged (at the time) controled buy from Febuary 27, 2020. Defense counsel established to magistrate that the controled buy was uncharged & he did not understand. Governments attorney placed magistrate on notice that he would be seeking a superceeding indictment. (See Febuary 25, 2021 oral arguments)

    Although defense counsel did not know at the time but should have known through "Brady v. Maryland", at the time of the Febuary 25, 2021 oral argument hearing, that the governments attorney was in direct possesion of exculpatory evidence pretaining to Flowers & the Febuary 27, 2020 controled buy that the governments attorney attempted to rely on in front of magistrate to establish the pinkerten theory & Baker being indicted for the 3 possesion counts of items found not in his direct possesion, but in Flowers!

    Approximately 1 month after the governments attorney presented the pinkerten theory to the magistrate & the uncharged Febuary 27, 2020 controled buy to establish Baker being indicted for 33 Locust Street. On March 25, 2021 the governments attorney, Star & Soul witness testified before the grand jury & within doing so provided the direct exculpatory evidence, " that on the night of the Febuary 27, 2020 controled buy, the "cs" was shown a photo array line up which contained Flowers photo in it & the "cs" "didn't" identify Flowers, as the person who sold him drugs on the night of Febuary 27, 2020. Although Agent Smith, attempted to provide the grand jury an elaborated excuse as to why the cs possibly did not identify Flowers, as the person who sold him drugs. The clear & direct exculpatory evidence being " The cs was shown a photo array that contained Flowers photo in it & he did not identify Flowers as the person who sold him drugs on the night of Febuary 27, 2020.

Baker stands to ask 3 outstanding questions (1) if the governments had knowledge of such exculpatory evidence why wasn't Baker provided such through defense counsel (2) if Flowers, was not identified by cs as the one who sold him drugs on the night of February 27, 2020, how did the pinkerton theory apply (3) How was Baker indicted for anything found in Flowers possession & not in his???

Following the testimony at the grand jury on March 25, 2021, on April 5, 2021 a superceeding indictment was returned alleging the same counts from the original indictment with the 2 added counts of possesion, which became counts 2 & 3. Count 2 being 841(a)(1) & (b)(1)(c) & 2 Aiding & Abetting pretaining to the February 27, 2020 controlled buy & Count 3 841(a)(1) & (b)(1)(c) possesion pretaining to the March 19, 2020 controlled buy. Baker in a confused state directly addressed the magistrate & the governments attorney, pretaining to the conspiracy count & the time he's been waiting. (See A-1804) As the governments attorney established & confirmed for the record (A-1805 - A-1806) "invert" "Now the facts haven't changed. The charges-- The conspiracy that we're relying on, is the same conspiracy that we alleged in the criminal complaint affidavit".

(The government attorney continues to elaborate making such claims like "we're seperating him out in order to try the case more effectively & efficiantly" & we thought it not only made sense not only to the government, but frankly, to MR. Baker to sever him out agree to the motion for severance & then get to trial for charges against him more quickly) "which they didn't & did not provide courts notice that the people was ready for trial until January 2022 Appx 9 months later" (see notice)

Defense counsel filed second omnibus motions, getting more indepth within the motions as well as oral argument. As defense counsel advances the direct arguments not only pretaining to the conspiracy but deliberately at the 3 possesion counts alleging misconduct & requesting inspection of grand jury, dismissal of indictment & Bill of particulars. Due to the lack of discovery connecting Baker to 33 Locust Street & the numerous contradicting statements with in the discovery, ROI & Criminal Complaint. (See A-774 - A-824) & (June 16, 2021 oral arguments)

17

The attorney for the government reply's in his opposition motion as he attempts to lay out circumstantial evidence to establish a connection between Baker, Flowers & the Febuary 27, 2020 controlled buy as he is directly relying on the pinkerton theory to hold Baker credible for the items found directly in Flowers possesion at 33 Locust Street. "Which Baker claims was a ruse to pull wool over the magistrates eyes to get him to deny Baker's request," (as he succeeded & magistrate did deny & adapted governments argument whole heartedly) (See DKT 132)

Although the governments attorney attempted to provide circumstantial evidence attempting to link Flowers to the Febuary 27, 2020 controlled buy, we cannot ignore or overlook the direct exculpatory evidence excluding Flowers, from the Febuary 27, 2020 controlled buy, that the governments held in its possesion. As they are standing strongly on the Febuary 27, 2020 controlled buy & the pinkerton theory for Baker being indicted for things found in Flowers possesion at 33 Locust St. Given the following key points & direct exculpatory evidence one can only think that the governments misconduct was direct, intentional & deliberate.
(1) Febuary 27, 2020 was not charged as an act of conspiracy but soully as Aiding & Abetting (2) Febuary 27, 2020 controlled buy held no connection to the charging conspiracy alleged in the criminal complaint relied upon by the governments attorney as it was established at superceeding indictment arraignment. (3) Baker was indicted July 16, 2020 for possesion of 33 Locust St. Apprx 8 months prior to the governments attorney star witness (Agent Smith) testified to exculpatory evidence before the grand jury, that Flowers, was not identify as the person who sold cs drugs on Febuary 27, 2020 (4) the vehical driven by the unknown male who allegedly sold cs drugs was not registered to Flowers at the time of controlled buy. (5) Although the vehical that was driven by unknown male was survielled to 33 Locust St. There was no observation of driver entering 33 Locust St. let alone upstairs Apt.

With the governments attorney having direct knowledge of these critical key points. How & why was Baker indicted for anything found not in his possesion & why did they produce such an argument to the magistrate under the pinkerton theory, when they clearly knew that it could not & did not apply ??

It's a true blessing that the jury did not buy it, but it shouldn't have made it that far. Nor should have the governments attorney provided it to the magistrate to begin with as he clearly prejudiced the mind of the magistrate by deliberately pulling wool over his eyes through its deception & misconduct.

Mitchell's Photo Misidentification –

CS Mitchell didn't positively ID Flowers until years later. Magically, his memory got "better" over time, not the other way around with nearly all witnesses. Which the common understanding being witness memory fades as time passes. But why did the police show confidential source Mitchell a lineup that didn't include the actual suspect? The notation that somehow the police showed the governments source a police line up without the actual suspect in it caused the misidentification is too tall of an order. This is odd, at minimum & down right bizzare on its face. No police line ups, in the history of line ups shows a line up without the actual suspect in it. But years later, Flowers photo was the only photo shown to Mitchell, & then Mitchell was directly able to positively identify Flowers. The government erred in the line up identification & the series of actions surrounding the Flowers identification was untruthful. As Agent Smith testimony before the grand jury, served as an obstruction to Baker's due process of a fair trial. The fabrications, taken together as a whole, formulate a solid picture of intentional misconduct significant enough to warrant an evidentuary hearing.

Post-indictment lineups & showups are "critical stages" of a prosecution. The Supreme Court recognizing the high probability that suggestive pretrial lineup would lead to unreliable & thus prejudicial identifications, the court put strict guardrails on how a lineup maybe conducted. (See United States v. Wade, 388 U.S. 218, 235-37 (1967) (See also Perry v. N.H., 565 U.S. 728, 248 (2012) Proper police protocal was not followed with Mitchell, & these failures prejudiced Baker's fair-trial guarantee.

Conspiracy -
"To prove conspiracy the government must show that the defendant agreed with another to commit the offense; that he knowingly engaged in the conspiracy with specific intent to commit the offense that were the objects of the conspiracy; & that an overt act in furtherance of the conspiracy was committed. (See U.S. V. Munaco, 144 F.3d 381, 386 (2d cir 1999)"

"To prove conspiracy, the government must show" more than evidence of a general cognizance of criminal activity, suspicious circumstance, or mere association with others engaged in criminal activity. (See U.S. V. Samarria, 239 F.3d 228, 233 (2d cir 2001)

Title 21 of United States Codes provides, inter alia, that it is unlawful for any person knowingly or intentionally to distribute or posses with intent to distribute a controlled substance 21. U.S.C.S. 841(a)(1) or to conspire to commit such offense 21 U.S.C.S. 846. To prove intent, of course the government must show knowledge, for knowledge is the foundation of intent. Thus since the government cannot establish the substantive 841(a)(1) offense of distribution or possesion with intent to distribute without proving that the defendent knew he was dealing with a controlled substance, it likely cannot establish 846 conspiracy to distibute or posses with intent to distribute without proving inter alia, that the defendent knew that the conspiracy involved a controlled substance. Proof that the defendent engaged in suspicious behavior, without proof that he had knowledge that his conduct involved narcotics, is not enough to support his conviction for conspiracy to traffic in narcotics. Proof that defendent knew some crime would be committed is not enough. U.S. V. Torres, 604 F.3d 58 (2d cir 2010)

Baker, stands to argue that the governments attorney failed to prove the conspiracy as charged! Baker, was arrested on April 30, 2020 based on a 171 page Criminal Complaint affidavit, establishing that he conspired with the los organization.
" los-Gonzalez-Rivera, was leader of the organization that distributed large amounts of cocaine, heroin & fentanyl in the Rochester, Ny area"..."Earnest Baker AKA Slay are close associate of Gonzalez-Rivera & distributes cocaine & fentanyl for the

20

Organization." (See A-140-A-147)  Baker, was later indicted July 16 2020 for the same conspiracy alleged in the criminal Complaint. And then again superceeded on March 25, 2021, & arraigned April 5, 2021 on the superceeding indictment. Although Baker was now the soul defendent listed within it's indictment, the government, made it loud & clear as to exactly what conspiracy they were relying on for Baker indictment (See A1804-A-1806) (incert) " Now, the facts haven't changed. The charges -- the conspiracy that we're relying on is the same conspiracy that we alleged in the criminal Complaint affidavit."

That being the "Gonzalez-Rivera organization," & "Baker, being a close associate to Gonzalez-Rivera, who distributed Cocaine & Fentanyl for the organization". (See-A-133-A304) Baker confirms through secord circuit law that the governments attorney failed to establish that he conspired with the Gonzalez-Rivera, organization. & that through the production of its case in cheif, the testimony & evidence did not & could not reach the key elements of proof beyond a reasonable doubt. The governments attorney produced 3 civilian witnesses, Deleon, Figueroa & Mitchell.

(¹) Deleon never testified to any direct knowledge of Baker being involved in drugs. In fact when the governments attorney directly questioned her about the walmart meet she testified to 2 seperate occasions. The first meet being roughly October of 2019 & the second meet being roughly in early 2019. (See A3539-A-3540) Through her direct testimony the government never established, why did she direct her sister to walmart. " Q- Now, you indicated-- I want to direct your attention to roughly October of 2019, okay? Do you remember a time, I think you mentioned earlier that you directed her to walmart?

A. Yes."

The governments attorney elicited no more from Deleon about the October 2019 walmart meet. Now when it came to the, roughly in early 2019 meet they were direct & precise as to what took place. which would do nothing more for Baker, than evclude him out of that meet as he was incarcerated until "Aug 2019", which is clearly not "roughly Early 2019."

21

Although Figueroa's cross examination testimony will just about confirm Deleon's "non-testimony" to drugs being dropped off at walmart. As Figueroa, testified that her testimony was different than what she told the government at that time! As this line of questioning took place.

Q- So when they questioned you, you eventually told them that at walmart, your sister had dropped off a bag correct?

A- Not correct

Q- Bring your attention to the bottom portion & see if that refreshes your recollection.

MR. RODRIGUEZ- About what? What was the question that she needs refresh of recollection on?

MR. DIPRIMA- The question is whether or not a bag was handed to her by her sister.

Q- Does that refresh your recollection?

A- Yes, but that is not how it happened.

Q- Okay so, your testimony is different than what you told the government at that time, is that correct?

A- ~~Correct~~. Yes.

Q- Do you remember telling the government that you didn't look inside the bag, but you felt the bag?

A- Correct.

Q- And is that true?

A- Yes.

(A-3738 - A-3739)

Despite Deleon & Figueroa, testimony not lining up about the walmart meet 3 key points where established through their testimony. (1) Deleon did not testify to sending Figueroa to drop off drugs October 2019, (2) Figueroa test-ified that Deleon did not drop off a bag to her & that her testimony was different than what she told the government & (3) Figueroa never looked inside the bag but felt it. Furthermore, the governments attorney alleged that text message between

Gonzalez-Rivera & Baker confirmed & corroborated the walmart meet. Relying on the text messages to corroborate anything will easiley & more likely establish that the meet was for non-less food as the text message states " Tell her thanks for the bread, I'm fucking this shit up" (A-4648.)

Despite Figueroa, having a food business, she clearly & directly testified that she has lied to the New York State Police under penalty of perjury & will lie to protect herself & Someone close to her (A-3752- A-3757)

Additionally to these key facts through Figueroa's testimony the conspiracy elements did not & could not be reached as she testified on cross exam that she never actually looked in the bags, so she did not know what she alleged- ly gave Baker (See A-3740-A-3741) With nothing more, the direct element of knowledge & intent can not be established nor could the additional elements. (1) Who did Baker agree with & what did we agree to do (2) How did Baker knowingly engage in the conspiracy to distribute narcotics mainly Fentanyl & Cocaine (3) what ~~overtak~~ overtact was established to further the conspiracy ?? With nothing more than Figueroa, giving Baker a bag the 846 to 841 conspiracy elements could not be reached. (See case law provided.)

Finally at all stages the guernments attorney, the district Court as well as the appellete court all are in agreence that Figueroa did nothing more than delivere drugs to Baker. (See gov appeal brief pg 57) (See District Court opinion Rule 29 & 33) (See Appellete courts opinion page 5)

Multiple Conspiracy Instruction -

Defense counsel for Baker attempted to request a Multiple Conspiracy instruction. Based upon the discovery provided, defense counsel believed that the governments attorney would not be able to establish that Baker, conspired with the Gonzalez-Rivera, Organization. In an attempt to protect their client defense counsel seeked a Multiple conspiracy instruction to possibly prevent governments attorney from prejudicing the minds of the jury. (In which they failed.)

The governments attorneys misconduct poured right into their response in their opposition motion to Multiple conspiracy instruction. Directly taking advantage of the District court lack of awareness, as to what was directly established at the magistrate level. That being what conspiracy they (governments attorney) was relying on for Bakers conspiracy. As the District Court pointed out that "Baker was the Soul defendent in his indictment". The governments attorney having direct & first hand Knowledge as to why Baker, was indeed the Soul defendent in his Indictment. (See A-1804 - A-1806) As they used the District Courts statement as their backbone for its argument to manipulate the District court Judge. (See A-1519 - A-1520) The governments attorney established that the conspiracy they were relying on was "the Same Conspiracy alleged in the Criminal Complaint". With that being the case defense counsel, along with Baker, continued to prepare to challenge just that! Within preparation discovered that a multiple conspiracy instruction maybe required in an attempt to avoid the governments attorney from producing a seperate conspiracy other than what Baker was charged with. (As They failed again)

Within the governments attorneys own argument in Opposition response, directly displayed exactly what defense counsel & Baker, seeked to prevent, a direct multiple conspiracy. As governments attorney Knew first hand that Baker, was not charged in a direct conspiracy with Flowers, But only the Gonzalez-Rivera, Organization, as established by the governments attorney at arraignment of superceeding indictment relied upon in the criminal complaint affidavit, as they also Knew that Flowers was not listed in that Criminal

Complaint, & that Flowers directly plead guilty to a seperate & distinctive conspiracy, drafted in an Information by the governments attorney's office, that being a cocaine conspiracy from Aug 2018- April 30, 2020.

With that being the case & given the facts one can only consider that the governments attorneys misconduct was direct & intentional & such decite directly & deliberately violated Bakers due process guarantee to a fair trial. Such misconduct requires a evidentuary hearing at minimum!!!

## Varriance -

U.S. V. McDermott, 245 F.3d 133, 139 (2d cir 2001) " Reversal is only warranted for a variance if the defendent shows both (1) the existence of a variance & (2) that substantial prejudice occured at trial as a result.

U.S. V. Dove, 884 F.3d 138 (2d cir 2018) In assesing whether a defendent is prejudiced when the evidence would allow a jury to find multiple conspiracies rather than a single conspiracy alleged, one of the priciple consideration is the spill-over effect of permitting testimony regarding one conspiracy to prejudice the mind of the jury against the defendent who is not a part of that conspiracy but another.

" DeLeon testified to the existence of a drug trafficking conspiracy run by JanCarlos Gonzalez-Rivera, specifically that DeLeon, participated in this conspiracy by packaging & delivering drugs. 6 & DeLeon explained that her sister, Natasha Figueroa, also became involved in packaging & delivering drugs for the drug trafficking operation. Figueroa testified at trial that Gonzalez-Rivera, directed her, through DeLeon to deliver drugs to Baker multiple times. These delivers were corroborated by text messages (2025 U.S. App. Lexis) between Gonzalez-Rivera & Baker coordernating the meetings. And Figueroa also delivered drugs to Bakers co-conspirator, Philip Flowers. (Appellete opinion page 5)"

" Based on this evidence alone a reasonable jury could find that Baker conspired to traffic in Fentanyl (at a minimum with Flowers) & in the amount of 40 grams or more". (see page 56-57 governments reply brief Appeal)

25

Baker, was arrested April 30, 2020 based upon 171 page Criminal Complaint affidavit alleging a direct & specific conspiracy, (See A-133- A-304) he was later indicted July 16, 2020 for the Same conspiracy alleged within the Criminal Complaint with 3 added counts of possession from 33 Locust street. On March 25, 2021 a superceeding indictment was returned & Baker, was arraigned on those charges & indictment on April 5, 2021. At the arraignment of the superceeding indictment in a confused state Baker directly addressed the Court & the governments attorney & this back & forth took place. (See A-1804- A-1806)

Baker: I came in on a Criminal Complaint arresting warrant X amount of drugs & X amount of activity that lead to an indictment from that Criminal Complaint of X amount of drugs & X amount of X activity with X amount of people. So here it is on March 25th. I've been handed down another indictment that says you have nothing to do with them. Now granted, my lawyer has explained to me, as he just said, it may lead to still being used as part of that conspiracy. But from my indictment & what it said, me & people known & unknown. Do you understand? I sat eleven months preparing myself to challenge the allegations that was presented to me by the grand jury from the government saying you & these people for X amount of years did X y & z. So now after oral arguments of challenges of the arresting warrant & different things that were presented at oral argument, it gets stopped & Says nope we're going to change this from this time to this date for X amount of drugs. That's is the confusing part that I'm not understanding.

MR. RODRIGUEZ: Well, Judge, I would -- I mean the defense can make what ever motion they deem fit. I would like to point out that the change in the date is because the initial conspiracy charged started back in 2016. Now MR. Baker was incarcerated for a portion of that conspiracy & got out, I think July, or August of 2019. Now the facts haven't changed. The charges-- The conspiracy that we're relying on is the Same conspiracy we alleged in the Criminal Complaint affidavit. He doesn't have to go anywhere. It's not like we're adding additional facts. We're simply seperating him out in order to try the case more effectively more effi-I ciantly, particularly given the defense motion. I don't think there's any loss

for him. He knows the information provided. The discovery is the same. I'm not sure there is any additional discovery that needs to be provided. We turned over the lab reports to MR. Pilato with respect to the controlled buys involving his client. So if your honor grants a motion for Bill of Particulars, we will respond to it accordingly, but the facts haven't changed the charging instrument changed because of the severance. This is not the first case & went be the last were a defendent in a large conspiracy is severed out. It happened before & it's happened in the Western District of New York many times. There's is nothing particulary unique about this situation. Defendents often times ask for severance of themselves from large conspiracies for fear that there will be prejudicial spill over & things of that nature. The government normally opposes it, but given the particular circumstances in this case, we thought it not only made sense not only to the government but frankly to MR. Baker, to sever him out agree to the motion for severance & then get to trial for the charges against him more quickly. (A-1805- A 1806)

   Within this back & fourth between Baker & the governments attorney there was key points established & confirmed (1) "Now the facts haven't changed. The charges -- The conspiracy were relying on is the same conspiracy we alleged in the criminal complaint affidaut (2) It's not like were adding additional facts (3) were simply reperating him out in order to try the case more effectively more efficiantly (4) He knows the information provided. The discovery is the same (5) Defendents often times ask for severance of themselves from large conspiracies for fear that there will be prejudicial spill over & things of that nature. All key points confirmed to Baker's defense counsel that the (us organization Conspiracy alleged & established in the criminal complaint affidauit, would be the conspiracy that the governments attorney would be seeking to produce Bakers guilty at trial of (See A-147) "Not that Baker had a conspiracy with Flowers"...

   Additional to the government attorney establishing that the conspiracy alleged is the same conspiracy from the criminal complaint & confirming that the facts haven't changed. Flowers, was not listed as a co-conspirator to the Gonzalez-Rivera organization, as listed in the criminal complaint affidaut

27

See A-147) Although there was a mention of a "male believed to be Flowers" in the "surviellance section" of the criminal complaint affidavit, at "no" point in the discovery provided to Baker, was there ever confirmation established that the "male believed to be Flowers" was ever actually identified as being "Flowers". Further more Apprx 1 year to Baker proceeding to trial Flowers directly was sentenced to a seperate & distinctive conspiracy, that being a cocaine conspiracy from Aug 2018-April 2020, never establishing that he conspired with Baker or the Gonzalez-Rivera, organization.

    The governments attorney having direct knowledge of such & that Baker, was not charged in a direct conspiracy with Flowers, within the governments attorneys opening statements directly seeked to prejudice the minds of the jury as they zero in on making Baker & Flowers connection, their focal point, while utilizing the Gonzalez-Rivera, organization as it's back drop through the testimony of Deleon & Figueroa. (see opening statements)

    The governments attorney presented Deleon & Figueroa's test-imony in a direct attempt to establish Baker's connection to the Gonzalez-Rivera organization. Providing that Figueroa's testimony only established that she did nothing more than deliver Baker a bag, that she did not look inside but felt, was a failed attempt at establishing Baker's connection to the Gonzalez-Rivera organization. But was a direct score for the governments attorney, as they succeeded at admitting the large amounts of Fentanyl that was found in Deleons direct possesion. Directly prejudicing Baker & the minds of the jury through the prejudicial spill-over. (Expecially given the governments attorney Pinkerton theory instruction)

    Baker, clearly argues that the governments attorney failed at proving the conspiracy alleged & relied upon as established by the governments attorney at the superceeding indictment arraignment. (see A-1804-A-1806) As Baker directly allegeds at "best" the governments attorney produced a prejudicial variance through their testimony & evidence provided to the jury. Furthermore as Baker stands to make such challenge, the governments attorney themselves directly concedes to Bakers argument as they establishes in their appellete brief response

(" During the controlled purchase on Febuary 27, 2020, Baker & his co-conspirator Flowers worked together to make the exchange of 20 grams of Fentanyl for cash with the CI's. When law enforcement Searched Flowers residence 33 Locust Street Shortly thereafter on April 30, 2020, they found an additional 33.28 grams of Fentanyl. Baker had been suffer survielled on several occasions coming & going from 33 Locust Street & even sent a text to Flowers, shortly before the second controlled purchase letting Flowers know that Baker was at 33 Locust Street (unaccompanied when Flowers was else where) Based on this evidence alone, a reasonable jury could find that Baker conspired to traffic in Fentanyl (at a minimum with Flowers) & in an amount of 40 grams or more.

Baker, disputes the governments attorney argument. Due to the governments attorneys establishment of the conspiracy that they were relying on, when addressed by Baker himself in open court at the superceeding arraignment. The governments attorney made it loud & clear", Now the facts haven't changed. The charges -- the conspiracy that we're relying on is the same conspiracy we alleged in the criminal complaint affidavit." (See A-1804 - A-1806) Again with that being said, relying on the conspiracy alleged in the criminal complaint affidavit," Earnest Baker AKA SLAY is a close associate to Gonzalez-Rivera, who distributes cocaine & Fentanyl for the organization". (See -A-147) Standing on such statement, the government has made it exceptionally clear that they are alleging Baker, to have conspired directly with the Gonzalez-Rivera organization as the claim," (Baker) "who dis-tributes Cocaine & Fentanyl for the organization". (Not Flowers)

The government did not list Flowers to be a member of the Gonzalez-Rivera organization nor did they allege for him to be so. (See -A-147) (Background) The government attorney showed "no" connection between the February 27, 2020 controlled buy between the Gonzalez-Rivera organization & Baker. Nor did they allege it to be an overt act of the organization.

Therefor Baker, argues that a reasonable jury couldn't have & shouldn't have been able to come to a conclusion", Based on this evidence alone, a reasonable jury could find that Baker conspired to traffic in fentanyl (at minimum with Flowers) & in an amount of 40 grams or more." Because that evidence shouldn't

have been presented to a reasonable jury to begin with as the act of conspiracy by Baker, when the governments attorney themselves, confirmed & established what conspiracy they were relying on.

Finally Baker, concludes, based upon the governments attorney own addmission, that the evidence provided & relied upon by a reasonable jury created a clear & direct prejudicial variance & such variance, substantial prejudiced Baker & his trial. (" Standing on U.S. v. McDermott & U.S. v. Dove." As Baker, was clearly convicted for a conspiracy that he was not charged with & for a drug amount that couldn't have & shouldn't have been found.

The Magistrate court violated Bakers Speedy trial Constitutional Right –

Baker, never relented his Constitutional Speedy trial guarantee & the governments attorney can't establish that he did! All of what we have is that Baker did not preserve it proper. But that's not what the Constitution calls for. It's a guarantee that must be relenquished. The Magistrate judge never assigned Bakers rights from the begining & only brought it to bare several months later when Bakers, attorney failed to address the Barker factors once requested. This is not the fault of Baker, as has been illustrated (supra) this was the direct failure of defense counsel. Yet the 8-month delay is seperate & apart from the omnibus motion hearing.

The government attorney seems to blame Baker for requesting a severance. (page 36 of appellete brief response) When the governments attorney agreed to have Bakers case severed from his codefendants, this was to ease discovery & un-cluster & uncomplicate procedural intanglement in getting Baker to trial faster. "It didn't". And the Appellete court declined to resolve the Constitutional Speed trial issue. (See page 2 Appellete Opinion)

The question of Constitutional Speedy trial has not been settled on appeal & is much more relevant, given the prejudice of Bakers counsel. It is settled that Bakers defense counsel did not submit the response motion addressing the Barker factors when requested & established that they would. This failure prejudiced Baker before the upper courts, at each level it was addressed & each court viewed it important.

Barker - Wingo Factors

Length of delay - It took approx 25 months for Baker to get to trial. Baker was arrested April 30,2020 on a criminal complaint affidavit's did not proceede to trial until May 16, 2022.

Reasoning for Delay - Magistrate elected to toll clock for detention hearing.

July 16,2020 Indictment returned, (no trial date established) Speedy trial Clock tolled by Magistrate, for pretrial motions & discovery (under 3161h) motion dead line set for Oct 30,2020.

Defense counsel request a 30 day extention (without consulting Baker) Pretrial deadline extended to Nov. 30,2020.

February 7, 2021, governments attorney files motion to extend cell phone search warrant.

Febuary 25, 2021, oral arguments held to first omnibus motion, governments attorney agree to defense counsels request to sever Baker.

March 25, 2021, Grand jury proceedings

April 5, 2021 Arraignment of Superceeding indictment. Second pretrial motion dead line set May 3, 2021 Oral argument set for June 16, 2021

June 16, 2021, Oral argument to Second omnibus motions

Sept. 19, 2021 decision & order returned for cell phone extention, by governments attorney.

January 2022, government gives first notice to district court, that "the people are ready", trial date set for May 16 2022.

Febuary 17, 2022, Magistrate returns, decision & order to the second omnibus motions.

March 2022, defense counsel files appeal to magistrate decision & order.

May 16, 2022 trial begins.

Baker, directly argues that the bulk of delay relies on the magistrate as well as the governments attorney. The magistrate, never set a trial date. Even after he elected to resolve conflict issue, between Baker & defense counsel, as Baker, expressed his direct issues with counsel was, counsel requesting post-ponements without consult-

ing Baker first & that defense counsel did not request a speedy trial date as requested by Baker. The governments attorney elected to file motion to extend cell phone search warrant February 7, 2021, after its failure, to meet deadline requirements as provided in search warrant. Febuary 25, 2021 oral arguments the governments attorney agrees to severance motion filed by defense counsel.

The governments attorney elects to seek a superceeding indictment. As the governments attorney establishes at arraignment its reasoning "were simply seperating him out in order to try the case more effectively more efficiantly" "The government normally opposes it, but given the particular circumstances in this case, we thought it not only made sense not only to the government but frankly to Mr. Baker, to sever him out agree to the motion for severance & then get to trial for charges against him more quickly". (they didn't) (A-1805-A1806)

The Magistrate did not return a decision to the governments cell phone extention until Sept 14, 2021. Appix 8 month from the filing date. As he did not return a decision for the oral arguments hearing held on June 16, 2021 until Febuary 17, 2022. Again Appix 8 months from the actual hearing date. Therefer its clear to claim that a direct 1year of the delay is clearly attributed to the governments attorney from their filing date of Febuary 7, 2021 & the Magistrate, failing to return a decision to the omnibus motions until February 17, 2022.

Baker asserts that the direct delay of 1year, clearly establishes the presumed prejudice threshold as established in U.S.V. Black, 918 F.3d (2019)
Assertation of the Right-

Baker claims that he did all that he felt he could do when it came to asserting his right. (1) he directly told counsel he wanted a speedy trial from the begining (2) when defense counsel failed to request a speedy trial, but requested a post-ponement date instead, Baker, took the direct issue to the attorney grievence committe, then in turn directly placed magistrate on notice at status conference (3) when the governments attorney seeked the superceeding indictment, Baker took it upon himself to directly address the magistrate about the time he's spent preparing (4) when the magistrate delayed in responding to the omnibus motions, Baker

32

again addressed the courts, asking questions about pretrial motions & his "speedy trial" clock (5) when the magistrate misinterpreted defense motion for speedy trial soley as a Statutory claim, Baker requested defense counsel to appeal & directly establish to the District Court, that the speedy trial Claim was also a Constitutional Claim. (6) when the District Court established to the defense counsel that he had not properly raised the Constitutional argument & if he wished to present the argument that he could do so, as defense counsel told the court he would do so he failed. Baker, directly advised defense counsel to do so, defense Counsel told Baker," It has already been denied, the argument is preserved" lets get ready for trial."

(7 As the Sixth Amendment provides the proper assistance of Counsel, Baker having a laymans understanding followed what he believed at the time was proper assistence guidence." (while still attempting to do what he could.)

Prejudice from the delay-

The appx 25 months Baker sat awaiting to get to trial, was beyond uppressive. As he was locked inside a cell during the hight of the Covid 19 pandemic with a direct chronic illness himself. (that he directly presented to the courts) Additionally to Baker being locked in a cell while the pandemic was on the rise he was not recieving proper care & treatment, as he went weeks of being sick before medical attention was provided. Having to go weeks without Showers, not being able to properly communicate with family & loved ones, while the jail staff placed the food trays on the floor outside of the cell door, while they open each cell door one by one, to recover trays, by the time the food is recovered its cold!

Bakers, anxiety was to the highest degree, not only did he battle Covid 19 twice, with the fear of the unknown of how his body would respond to the virus. As he directly try to prepare to face the allegation that the governments attorney has placed upon his shoulders, as the governments attorney has whole hearted expressed that Baker was facing a possible life sentence as confirmed by the magistrate himself. But not to settle on just that,

the governments attorney stood up in open court on multiple occasions & directly accused Baker, of plotting to murder the cs or plotting to have someone else murder the cs, directly hinting at a possible murder for hire charge!! with the direct knowledge of that & facing a possible life sentence on Bakers mind night & day, to state Baker, having anxiety is an understatement.

The approximate 25 month delay with getting, Baker to trial prejudice Bakers defense & trial in a grave & direct way. In so much as hindering Baker, from mounting a just & proper defense. There were audio recordings, pretaining to 2 controlled buys, that became critical to Bakers, defense. That held direct exculpatory evidence that would have helped advance Bakers defense at trial. But was placed under a direct protective order, that restricted Baker, from hearing them before 3500 material. With the magistrate, never establishing a trial date & then further holding the omnibus motion decision for apprx 8 months, created an apprx 24 month lapse from the time of the first recording of the Febuary 27, 2020 controlled buy.

Although defense counsel did not object ~~the~~ the magistrate judge approach due to being provided the transcripts. When Baker, was eventually provided the opportunity to hear the audio recordings, It became directly clear to Baker, that the transcripts provided & the audio recordings were not in sync 2) there was loud music playing (3) multiple speakers (4) unitelligable / muted conversations (5) held suggestive body language (the cs testified that Baker used hand signals) 6) the direct & exculpatory, the cs exited vehical multiple times, one being to enter the Fast track store to buy a cigar & interacting with people outside of the investigation. (which became clear at trial no surveilling agent or officer observed cs exit his vehical nor enter the Fast Track Store or is activities while inside, as well is no observation of a meet with white tahoe) clearly breaching protocol & directly complemissing the search procedures.

Therefor had Baker, been afforded an opportunity to listen to the audio recordings at an earlier date Baker would have been able to (1) recover the surveillence footage from the Fast track store, that was learned through the audio recording that the "cs" went into. The surveillence footage would have been able to provide the jury in real time, the actual activity at the Fast track location, pertaining to the cs's activity that No surveilling agent was able to make an observation of. (1) what direct interaction did cs have "inside of store" outside of buying a cigar? (3) With whom? when cs asked for "Black's mild", was it directly pertaining to a Black's mild cigar as he claim or was that code for drugs? (2) The surveillence footage would of been able to capture in real time if the cs actually got inside of a white tahoe (3) if so possibly captured an transaction (3) what it was for. Baker, would have been able to attempt to gather witnesses from inside (3) outside of the Fast track location that either directly interacted with the cs or witnessed the cs interactions with others to be able to tell the jury what they saw to either credit the cs testimony or discredit such. Due to the fact that No surveilling agent was able to make any observation of the cs activities at Fast track, rather it be inside of the Fast track or meeting with a unknown male inside a white tahoe. With nothing more the jury was left with the paid informants narrative as to what took place, as he was promissed 20% of all proceeds from the take down, which was close to 1million dollars, as he was already provided Apprx 36K before trial.

Due to the time lapse of apprx 26 months from the time of the February 27, 2020 controlled buy (3) the first time Baker was allowed to hear the actual audio recordings, directly prejudiced Baker (3) his trial! Baker attempted to have his lovedones retrieve the surveillence footage from the Fast Track store but was told it was no longer available.

Conclusion

Baker, request this court to grant all relief requested within this petition at minimum he request that a direct evidentuary hearing be provided to determine the depth (3) scope of how his trial was effected.